**UNITED STATES of America, Plaintiff,**

v.

**Irwin HALPER, Defendant.**

**No. 86 Civ. 2955 (RWS).**

United States District Court,
S.D. New York.

April 23, 1987.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., New York City (Amy Rothstein, Asst. U.S. Atty., of counsel), for plaintiff.

Irwin Halper, pro se.

## OPINION

SWEET, District Judge.

In this action brought by the United States (the "Government") against the defendant *pro se* Irwin Halper ("Halper") for the filing of allegedly inflated Medicare claims in violation of the False Claims Act, 31 U.S.C. §§ 3729–3731, the Government has moved for summary judgment. Because Halper is collaterally estopped from denying the facts which entitle the Government to judgment in its favor, the motion for summary judgment is granted.

The following findings and conclusions are made on the affidavit, memorandum of law, and exhibits submitted by the Government, and the letter in opposition from Halper dated January 10, 1987.

### The Facts

At all times relevant to the complaint, Halper was manager of New City Medical Laboratories, Inc. ("NCML"), a corporation providing medical services to patients eligible for Medicare. Since January, 1982, providers of Medicare services have been instructed to use certain billing procedure codes on claims filed with Blue Cross and Blue Shield of Greater New York ("Blue Cross"), the fiscal intermediary of the United States Department of Health and Human Services. Blue Cross made available to each provider manuals listing the Medicare procedure code corresponding to each type of medical service and the cost Medicare would pay to providers for that service.

In addition to the procedure codes corresponding to each particular medical service, the manual specified two procedure codes to be included on Medicare claim forms for additional reimbursement to providers who had to travel to a private home, a nursing home or a Skilled Nursing Facility to perform a medical service. The "9018" procedure code was the proper code for seeking reimbursement for services performed on the first or only patient seen at such a facility. The "9019" procedure code was the proper code for seeking reimbursement for services performed on each subsequent patient seen on the same day at the same facility. According to the manuals, at all relevant times, the reimbursement allowed by Medicare for services billed under the "9018" code was either $10.00 or $12.00, and the reimbursement allowed by Medicare for services billed under the "9019" code was $3.00.

From in or about January, 1982 until in or about December, 1983, Halper submitted 65 claim forms that falsely characterized certain services performed by NCML as services reimbursable under the higher-priced "9018" procedure code rather than the "9019" code, even though they were performed not on the first or only patient but on subsequent patients at a particular facility on a particular day. Blue Cross, unaware of the foregoing circumstances, made payment on the Medicare claims at the higher "9018" rate when the claims should have been paid at the lower "9019" rate.

On July 9, 1985, Halper was convicted of 65 counts of submitting false claims in violation of 18 U.S.C. §§ 2 and 287, based on the same acts alleged in the complaint in the present action. He was sentenced to two years and a fine of $5,000.

### Collateral Estoppel

The False Claims Act is violated by anyone not a member of the armed services of the United States who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved." 31 U.S.C. § 3729(a)(2). The fact that Halper submitted false claims to Blue Cross, the Government's fiscal intermediary, rather than directly to the Government, is of no significance. *See United States ex rel. Marcus v. Hess*, 317 U.S. 537,

544–45, 63 S.Ct. 379, 384–85, 87 L.Ed. 443 (1943); *United States v. Bornstein*, 361 F.Supp. 869, 875 (D.N.J.1973), *aff'd in relevant part*, 504 F.2d 368 (3d Cir.1974), *rev'd on other grounds*, 423 U.S. 303, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976). The elements of the criminal false claims statute, 18 U.S.C. § 287, under which Halper was convicted, are identical to 31 U.S.C. § 3729(a)(2) in all relevant respects. The criminal statute makes it a crime to present to the Government "any claim upon or against the United States, or any department or agency thereof, knowing such claims to be false, fictitious or fraudulent."

In this civil case, the Government can rely on the criminal conviction obtained against Halper to establish issues which were necessarily determined by the judgment of conviction. *United States v. Greenberg*, 237 F.Supp. 439, 442 (S.D.N.Y. 1965). Since the conviction necessarily determined that Halper submitted claims to the Government "knowing such claims to be false, fictitious, or fraudulent," Halper cannot challenge that finding on this motion for summary judgment. *See United States v. Thomas*, 709 F.2d 968, 972 (5th Cir.1983) ("Because of the existence of a higher standard of proof and greater procedural protection in a criminal prosecution, a conviction [under the criminal false claims statute] is conclusive as to an issue arising against the criminal defendant in a subsequent civil action"); *Berdick v. United States*, 612 F.2d 533, 537 (Ct.Cl.1979); *Sell v. United States*, 336 F.2d 467, 474–75 (10th Cir.1964). Since Halper is collaterally estopped from creating a genuine issue of material fact, the Government is entitled to summary judgment under the False Claims Act.

**Damages and Forfeiture**

Title 31 U.S.C. § 3729 provides that a person who knowingly makes a false statement to get a false claim approved "is liable to the United States Government for a civil penalty of $2,000, an amount equal to two times the amount of damages the Government sustains because of the act of that person, and the costs of the civil action...."

The Supreme Court has held that a provision for a civil penalty of $2,000 plus twice the Government's damages is not in itself a criminal penalty giving rise to a claim of double jeopardy; reasoning that the purpose of such a provision is to ensure that the Government is fully compensated for any damages it has incurred. *See United States ex rel. Marcus v. Hess*, 317 U.S. 537, 548–52, 63 S.Ct. 379, 386–88, 87 L.Ed. 443 (1943); *Berdick v. United States*, *supra*, 612 F.2d at 538; *Murray & Sorenson, Inc. v. United States*, 207 F.2d 119, 122–23 (1st Cir.1953). Therefore, the standard for determining whether a penalty is criminal is not whether the Government can prove that the penalty imposed is equal to the Government's actual damages. Instead, a court must take into account the difficulty in many cases of calculating actual damages and the expense incurred by the Government in discovering the fraud and prosecuting a civil action for damages. Nevertheless, a civil penalty designed to make the Government whole cannot be entirely unrelated to actual damages suffered and expenses incurred by the Government.

Were this court to grant the relief the Government seeks, the statute as applied would violate the Double Jeopardy Clause. The Government seeks to recover $130,000, representing the $2,000 allotted by statute for each of the 65 false claims set forth in the complaint. At most, however, the amount by which the 65 claims were inflated was $9.00 for each claim, or $585. Even adding to that amount the Government's expense in investigating and prosecuting this action, the total amount necessary to make the Government whole bears no rational relation to the $130,000 penalty the Government seeks. *See Peterson v. Richardson*, 370 F.Supp. 1259, 1267 (N.D.Texas 1973), *aff'd*, 508 F.2d 45 (5th Cir.), *cert. denied*, 423 U.S. 830, 96 S.Ct. 50, 45 L.Ed.2d 47 (1975).

Although the Government has not briefed the issue, the imposition of a civil penalty of $2,000 for each false claim does not appear to be mandatory under the statute. *See United States v. Greenberg*, 237 F.Supp. 439, 445 (S.D.N.Y.1965). If it

were, under the circumstances of this case, Halper would have a valid double jeopardy defense, *Hess, supra,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 notwithstanding. Of course, not considered in this determination is the $5,000 criminal fine already imposed on Halper for deterrence and as a penalty. However, a civil penalty of $2,000 on 8 of the 65 claims, or $16,000, will reasonably compensate the Government for actual damages as well as expenses incurred in investigating and prosecuting this action. Although this is at best an approximation of the amount required to make the Government whole, the Government, in keeping with the relief it seeks, has submitted no evidence of its expenses in this action.

Therefore, summary judgment in the amount of $16,000 is granted in the Government's favor.

IT IS SO ORDERED.