**Ex parte Clifford Joseph ROGERS.**

**No. 05–90–01091–CR.**

Court of Appeals of Texas, Dallas.

Nov. 29, 1990.

Rehearing Denied Jan. 10, 1991.

Tim K. Banner, Dallas, for appellant.

Pamela Sullivan Berdanier, Asst. Dist. Atty., Dallas, for appellee.

Before ENOCH, C.J., and LAGARDE and BURNETT, JJ.

## OPINION

LAGARDE, Justice.

This appeal presents the question of whether the United States Constitution's fifth amendment prohibition against double jeopardy is triggered by a civil forfeiture proceeding under the Controlled Substances Act[1] and whether a subsequent

---

1. The forfeiture proceeding in this case was instituted pursuant to subchapter 5 of article 4476–15 of the Texas Revised Civil Statutes. TEX.REV.CIV.STAT.ANN. art. 4476–15, subch. 5 (Ver-

criminal prosecution is consequently barred. Because we conclude that double jeopardy does not preclude the State from criminally prosecuting appellant, we over-rule appellant's point of error and affirm the trial court's order denying appellant's preconviction writ of habeas corpus.

On August 30, 1989, pursuant to a search warrant, Dallas police searched appellant's residence.[2] Various items were seized during the search, including 653 grams of "crack" cocaine. The State filed an original notice of seizure and intention to forfeit some of the items confiscated during the search. *See* TEX.REV.CIV.STAT. ANN. art. 4476–15, subch. 5 (Vernon Supp. 1989). The notice of seizure and intention to forfeit alleged that the property seized was "derived from the sale, manufacture, distribution, dispersion or delivery of a con-trolled substance or other commercial un-dertaking violative of the Texas Controlled Substances Act...." The trial court en-tered an agreed judgment of forfeiture on September 17, 1989. The property forfeit-ed included: $6,406 in cash; one 1986 Chev-rolet; one 1985 Nissan; two safes; one television; and one mobile phone.

The State subsequently attempted to criminally prosecute appellant for posses-sion of over 400 grams of cocaine with the intent to deliver. Appellant filed a precon-viction writ of habeas corpus asserting that jeopardy attached at the forfeiture proceed-ing and that, therefore, he could not subse-quently be criminally prosecuted. The trial court entered an order denying appellant's writ of habeas corpus and appellant per-fected this appeal. In a single point of error, appellant contends that the forfei-ture of his property pursuant to the Texas Controlled Substances Act was punitive in nature and bars his criminal prosecution for the offense of possession of more than 400 grams of cocaine with the intent to deliver.

The double jeopardy clause protects against: 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after con-viction; and 3) multiple punishments for the same offense. *See North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Appellant does not specifically state on which prong of the double jeopardy clause's protection he relies; however, the case he cites in support of his argument pivots on the third prohibition: the prohibition against multi-ple punishments for the same offense. Thus, we focus on that prong.

In this case, the forfeiture proceeding occurred before the State attempted crimi-nal prosecution. In the double jeopardy case upon which appellant relies, the defen-dant was first criminally prosecuted and convicted and then subjected to an alleg-edly civil fine. We view this distinction in the timing of the criminal prosecution as irrelevant. *See U.S. v. Marcus Schloss & Co.*, 724 F.Supp. 1123, 1126 (S.D.N.Y.1989) ("If in fact a civil sanction may fairly be characterized 'only as deterrent or retribu-tion', then its exaction before imposition of criminal punishment should have the same double jeopardy effect as exaction after-wards.").

Appellant consented to the forfei-ture, and signed an agreed judgment. The defendant's conduct is relevant in a double jeopardy analysis. *See, e.g., Jeffers v. United States*, 432 U.S. 137, 152–54, 97 S.Ct. 2207, 2216–18, 53 L.Ed.2d 168 (1977) (if the accused could have been tried in one proceeding for various offenses, but choos-es separate trials, he cannot complain of a double jeopardy violation). A defendant may waive double jeopardy protection by consenting to a mistrial before the jury's verdict is rendered. *See United States v.*

---

non Supp.1989). This statute was repealed ef-fective September 1, 1989 and is now recodified without substantive change in chapter 59 of the Texas Code of Criminal Procedure. TEX.CODE CRIM.PROC.ANN. ch. 59 (Vernon Supp.1990). All references in this opinion are to the statute under which the forfeiture proceeding here was conducted. The pertinent provisions of the re-pealed statute are attached as an Appendix to this opinion.

2. Because the notice of intention to forfeit the seized property indicates that appellant must be served with notice and that such service may be had at the residence searched, we will assume for purposes of this opinion that the property seized belonged to appellant.

*Bauman,* 887 F.2d 546, 549 (1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1128, 107 L.Ed.2d 1034 (1990). The cases holding that the defendant's consent waives double jeopardy protection deal with the double jeopardy clause's prohibition against two prosecutions for the same offense. The cases do not address the consent issue in the context of the double jeopardy clause's protection against multiple punishments.

■■■ In the multiple punishments context, the double jeopardy clause insures that the total punishment does not exceed that authorized by the legislature. *See Jones v. Thomas,* 491 U.S. 376, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989). Its purpose is to insure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments. *Id.* Hence, we conclude that a defendant's agreement to a statutorily authorized forfeiture does not waive his double jeopardy protection against multiple punishments. To hold otherwise would discourage agreed judgments. Defendants could logically fear that an agreement to a forfeiture judgment could result in a second punishment against which they possess no remedy. Here appellant timely asserted his double jeopardy claim in a preconviction writ of habeas corpus before the trial court.[3]

■■■ The double jeopardy clause's protection against multiple punishments is triggered only by a sovereign's attempt to *criminally* punish a defendant twice for the same offense. *See generally United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 364, 104 S.Ct. 1099, 1105, 79 L.Ed.2d 361 (1984); *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). Typically, a statutory proceeding for the forfeiture of personal property is one *in rem* against the property itself and not one *in personam* against

the owner or possessor of the property seized. *State v. Rumfolo,* 545 S.W.2d 752, 754 (Tex.1976); *Fleming v. State,* 704 S.W.2d 530, 531 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). The jurisdiction of the court entertaining a forfeiture proceeding depends on seizure of the physical object to be forfeited. *See One Assortment of 89 Firearms,* 465 U.S. at 364, 104 S.Ct. at 1105; *Costello v. State,* 774 S.W.2d 722, 723 (Tex.App.—Corpus Christi 1989, writ denied). In a forfeiture proceeding, the court does not need *in personam* jurisdiction over the owner of the property to be forfeited. *See One Assortment of 89 Firearms,* 465 U.S. at 364, 104 S.Ct. at 1105. A statutory forfeiture proceeding under the Controlled Substances Act may ultimately result only in the forfeiture of property. *See* TEX.REV.CIV.STAT.ANN. art. 4476–15, subch. 5 (Vernon Supp.1989). It results in neither the imposition of a fine nor in a criminal conviction of the owner of the property.

■■■ The civil nature of a forfeiture proceeding under the Texas Controlled Substances Act is further evidenced by the language of the statute itself. Section 5.07(b) provides that if the owner of the property files a verified answer denying that the property is subject to forfeiture then the burden is on the State to "prove by a preponderance of the evidence that the property is subject to forfeiture." TEX. REV.CIV.STAT.ANN. art. 4476–15, § 5.07(b) (Vernon Supp.1989). This is the burden of proof in most civil cases. We conclude that a forfeiture proceeding under the Texas Controlled Substances Act is a *civil* proceeding. *See Costello,* 774 S.W.2d at 723.

■■■ However, the United States Supreme Court has held that a civil proceeding may, in certain "rare cases," be "punitive" for purposes of a double jeopardy multiple punishments analysis. *See United States v. Halper,* 490 U.S. 435, 109 S.Ct.

---

3. Appellant filed a joint motion styled "Defendant's Special Plea of Double Jeopardy and Writ of Habeas Corpus." The trial court denied both. Although it is unclear, we construe the appellant's notice of appeal to be from the trial court's denial of relief under the preconviction

writ of habeas corpus and exert jurisdiction on that basis. *See Ex parte Rathmell,* 717 S.W.2d 33, 34 (Tex.Crim.App.1986) ("the pretrial writ of habeas corpus is an appropriate remedy to review an individual's double jeopardy claim").

1892, 1901–02, 104 L.Ed.2d 487 (1989). In *Halper*, the Supreme Court determined that:

[U]nder the double jeopardy clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as deterrent or retribution.

*Halper*, 109 S.Ct. at 1902. Appellant contends that the civil forfeiture proceeding against his property under the Texas Controlled Substances Act falls within the *Halper* exception to the general rule that the double jeopardy clause does not apply to civil proceedings.[4]

Appellant argues that he falls squarely within the prohibition against double jeopardy applied in *Halper*. Halper, manager of New City Medical Laboratories, submitted sixty-five separate false claims for reimbursement to Blue Cross and Blue Shield who, in turn, submitted them to Medicare. New City Medical Laboratories received $585 in reimbursement to which it was not entitled. The government prosecuted Halper under the criminal False Claims Act. Halper was convicted and sentenced to two years' imprisonment and a $5,000 fine. The government then brought suit against Halper under the civil False Claims Act. Based on the facts of Halper's criminal conviction and incorporated in the civil suit, the district court granted summary judgment for the government on the issue of liability. The civil Act provided that a civil penalty of $2,000 could be imposed for each violation of the Act. Because Halper violated the Act sixty-five

times, he was subject to a statutory penalty of more than $130,000. The district court entered judgment for the government in the amount of $1,170. The court refused to impose the $2,000 fine per violation on the grounds that the Act, as applied to Halper, violated the U.S. Constitution's prohibition against double jeopardy. The United States Supreme Court agreed that the statutory penalty authorized by the civil False Claims Act, under which Halper was subject to liability of $130,000 for false claims amounting to $585, constituted a second "punishment" for the purpose of double jeopardy analysis. *Halper*, 109 S.Ct. at 1898. The Court determined that "in a particular case a civil penalty authorized by the [statute] may be so extreme and so divorced from the Government's damages and expenses as to constitute punishment." *Halper*, 109 S.Ct. at 1898.

Prior to its *Halper* decision, the Supreme Court applied a two-pronged analysis to determine whether a federal statutory forfeiture constituted a second "punishment" of a defendant previously criminally convicted. The Supreme Court first determined whether Congress intended the sanction to be civil or criminal. *See One Assortment of 89 Firearms*, 465 U.S. at 364, 104 S.Ct. at 1105. Second, if Congress intended the penalty to be civil, the Court looked further to determine whether the statutory scheme was so punitive either in purpose or effect as to negate that intention. *Id.* We do not view the test enunciated by the Supreme Court in *Halper* as a deviation from the two-step analysis followed in *One Assortment of 89 Firearms*. Rather, the *Halper* test may be juxtaposed

---

**4.** In addition to *Halper*, appellant's double jeopardy analysis relies on *U.S. v. Sanchez*, No. M–90–020 (S.D.Tex. March 14, 1990), an unpublished opinion. The State also cites *Sanchez* in its brief; neither party informed this Court that *Sanchez* was unpublished, nor did they present any authority concerning the precedential value of an unpublished opinion from the U.S. District Court. The local rules for the Southern District do not address the issue. The local rules for the Fifth Circuit Court of Appeals provide that unpublished opinions do have precedential value, but should be cited only in specific circumstances. *See* 5TH CIR.R. 47.5.3. The circumstances in which it is appropriate to cite a Fifth

Circuit unpublished opinion are not present here. The Fifth Circuit local rule further states that "[i]f an unpublished opinion is cited, a copy shall be attached to each copy of the brief." *Id.* Neither the State nor appellant attached a copy of the *Sanchez* opinion to their brief. Appellant has presented no authority for the proposition that the unpublished *Sanchez* opinion has any precedential value. Moreover, even if the decision has precedential value, such precedent is certainly not binding on this Court. *See P.V. International Corp. v. Turner*, 778 S.W.2d 865, 866 (Tex.1989). For these reasons we will not consider the *Sanchez* decision in our disposition of appellant's point of error.

with the second prong of the above analysis. That is, *Halper* exemplifies one fact scenario in which the civil statutory penalty scheme was so punitive in effect that it negated Congress's intent that the proceeding be civil.

We now apply the analysis to the facts here. The first prong of the analysis is whether the legislature intended that the forfeiture proceedings authorized by the Controlled Substances Act be civil in nature. The answer to this question is yes, for the reasons previously set forth. Additionally, the legislature's intent that the forfeiture proceeding be remedial is evidenced by section 5.08(f) of the statute. *See* TEX.REV.CIV.STAT.ANN. art. 4476–15, § 5.08(f) (Vernon Supp.1989). That section establishes a special fund into which some of the proceeds from the forfeited property are to be deposited. The section provides that the monies in the fund shall be used to investigate violations of the criminal laws of the State and that a portion shall be used to prevent drug abuse and to treat persons with drug related problems. These goals are plainly more remedial than punitive. We conclude that the legislature intended the forfeiture provision of Texas's Controlled Substances Act to be a remedial civil action.

█ Having concluded that the legislative *purpose* was remedial, not punitive, we must next determine whether the forfeiture proceeding here was so *punitive in effect* as to negate the legislature's civil or remedial intent. *See One Assortment of 89 Firearms*, 465 U.S. at 365, 104 S.Ct. at 1106. Only the clearest proof that the purpose and effect of a civil provision are punitive will serve to override the legislature's manifest preference for a civil sanction. *Id.* *Halper* indicates that a civil proceeding becomes punitive when "the civil penalty sought ... bears no rational relation to the goal of compensating the government for its loss...." *Halper*, 109 S.Ct. at 1901–02. However, the government may be entitled to compensation on more than one front. *See United States v. WRW Corp.*, 731 F.Supp. 237, 239 (E.D.

Mich.1990); *United States v. U.S. Fishing Vessel Maylin*, 725 F.Supp. 1222, 1223 (S.D.Fla.1989). The government is entitled to recover the monies it expended investigating and obtaining the forfeiture. *See One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 238, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972). The government is also entitled to remuneration for the injury and loss it suffered by the acts upon which forfeiture is predicated. *See United States v. A Parcel Of Land With A Building Thereon*, 884 F.2d 41, 44 (1st Cir.1989). The court in *A Parcel Of Land* held that a drug-related forfeiture of 17.9 acres of land, including a home and other structures located thereon, did not constitute "punishment" for the purposes of double jeopardy analysis. *Id.* at 44. The court stated:

> The ravages of drugs upon our nation and the millions the government is being forced to spend upon investigation and enforcement—not to mention the costs of drug-related crime and drug abuse treatment, rehabilitation, and prevention—easily justify a recovery in excess of the strict volume of the property actually devoted to growing the illegal substance, in this case marijuana.

*Id.* at 44. Other courts also broadly view the damages suffered by the government for purposes of the *Halper* test. *See WRW Corp.*, 731 F.Supp. at 239; *U.S. Fishing Vessel Maylin*, 725 F.Supp. at 1223. In *U.S. Fishing Vessel Maylin*, the appellant illegally obtained and sold 431 pounds of fish and 377 pounds of lobster and lobster tails and was convicted for fish and game violations under the Lacey Act. The monetary value of the illegally obtained seafood was approximately $1,942.40. The government instituted a civil forfeiture proceeding against appellant's boat and its appurtenances together valued at $55,000. The court determined that the amount sought in the civil forfeiture proceeding was rationally related to the injury caused to the government in light of the damage done to the wildlife which the violated regulations sought to protect. *Id.* at 1223. The court in *WRW Corp.* determined that a civil penalty of $90,350 which was imposed upon the appel-

lants after a criminal conviction and a $25,000 criminal fine, did not constitute a second "punishment" for double jeopardy purposes. The court held that the civil fine was reasonably related to the government's "ancillary costs of detection, investigation and prosecution" of violations of the Mine Safety and Health Act. *WRW Corp.*, 731 F.Supp. at 239.

 We hold that, here, the civil forfeiture proceeding was not so punitive in purpose or in effect as to negate the legislature's civil intent. We further hold that the facts here do not fall within the "rare case" exception created by *Halper* where the "penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he caused." *Halper*, 109 S.Ct. at 1902. Police seized 653 grams of crack cocaine at appellant's residence. Possession of this amount supports an inference that such possession was with the intent to deliver. *See Branch v. State*, 599 S.W.2d 324, 325 (Tex.Crim.App.1979); *Hawkins v. State*, 687 S.W.2d 48, 49 (Tex.App.—Dallas 1985, no pet.). This amount of cocaine is consistent with a large scale distribution operation. We do not imply that *appellant* in fact possessed the crack cocaine. Someone possessed this large amount of cocaine and we cannot say that the forfeiture of $6,406 cash, two cars, one mobile phone, one television, and two safes which were "derived from the sale, manufacture, distribution, dispersion or delivery of a controlled substance or other commercial undertaking violative of the Controlled Substances Act" was not reasonably related to the government's injury and expenses from drug distribution of this magnitude. We overrule appellant's point of error and affirm the trial court's order denying appellant's preconviction writ of habeas corpus.

## APPENDIX

### Forfeiture hearing

Sec. 5.07(b) If the owner of the property has filed a verified answer denying that the property is subject to forfeiture then the burden is on the state to prove by a preponderance of the evidence that the property is subject to forfeiture. However, if no answer has been filed by the owner of the property, the notice of seizure may be introduced into evidence and is prima facie evidence that the property is subject to forfeiture.

### Disposition of forfeited property

Sec. 5.08(f) All money, securities, certificates of deposit, negotiable instruments, stocks, bonds, businesses or business investments, contractual rights, real estate, personal property and other things of value, and the proceeds from the sale of an item described in this subsection that are forfeited to the seizing agencies of the state or an agency or office of a political subdivision of the state authorized by law to employ peace officers shall be deposited in a special fund to be administered by the seizing agencies or office to which they are forfeited. Except as otherwise provided by this subsection, expenditures from this fund shall be used solely for the investigation of any alleged violations of the criminal laws of this state. The director of an agency or the state may use not more than 10 percent of the amount credited to the fund for the prevention of drug abuse and for treatment of persons with drug-related problems. The director of an agency or office of a political subdivision that has received funds under this section shall comply with the request of the governing body of the political subdivision to deposit not more than 10 percent of the amount credited to the fund into the treasury of the subdivision. The governing body of the subdivision shall use the funds received for the prevention of drug abuse and for treatment of persons with drug-related problems. Nothing in this subsection shall be construed to decrease the total salaries, expenses, and allowances which an agency or office is receiving from other sources at or from the time this subsection takes effect.