Ex parte Maria Calderon CAMARA.

Ex parte Jose Carlos CAMARA.

Nos. 13–94–048–CR, 13–94–050–CR.

Court of Appeals of Texas, Corpus Christi.

Dec. 1, 1994.

Rehearing Overruled Jan. 5, 1995.

L. Aron Pena, Francisco Gonzales, Jr., Edinburg, for appellant.

Rene Guerra, Dist. Atty., Theodore C. Hake, Rebecca Pool, Asst. Dist. Attys., Edinburg, for appellee.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr. and COLLEY[1], JJ.

### OPINION

SEERDEN, Chief Justice.

Appellants appeal the trial court's denial of their applications for writ of habeas corpus. In a single point of error, appellants assert

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex.

Gov't Code Ann. § 74.003 (Vernon 1988).

the Double Jeopardy Clause[2] prohibits the State from prosecuting them for their criminal conduct. Appellants contend the State already imposed "punishment" for their criminal conduct when the State obtained a forfeiture judgment against their property. We affirm the trial court's denial of habeas corpus relief.

### Factual and Procedural Background

· Appellants Maria and Jose Camara, husband and wife, were each arrested and indicted on two counts: (1) for possessing nine hundred forty-one pounds of marihuana and (2) for failing to pay taxes on the marihuana. The State instituted a civil forfeiture proceeding against appellants' mobile home and lot pursuant to the contraband forfeiture statute, TEX.CODE CRIM.PROC.ANN. art. 59.01 et seq. (Vernon Supp.1994) ("Chapter 59 forfeiture").[3] The trial court rendered judgment, forfeiting appellants' mobile home and lot to the State.

After the civil forfeiture proceeding, the State initiated criminal prosecution against appellants. Appellants, in turn, filed separate special pleas of double jeopardy; the trial court denied the pleas. Appellants then filed separate applications for writ of habeas corpus, again seeking relief on double jeopardy grounds. The trial court denied appellants' applications, and appellants jointly filed this appeal.

### Issue

By their sole point of error, appellants contend the civil forfeiture of their proper-

ty—their homestead—constituted "punishment" within the Double Jeopardy Clause's meaning of punishment. Appellants further contend that if they were to be criminally prosecuted, they would be subject to jeopardy a second time for the same offense. The Double Jeopardy Clause of the Fifth Amendment, enforceable against states through the Fourteenth Amendment, guarantees a trio of constitutional protections: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same conviction, and (3) protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969).

This case involves the third protection. Here, the issue before us is whether appellants' forfeiture of their homestead under Chapter 59, constitutes "punishment" for purposes of double jeopardy analysis. This issue is not novel to the jurisprudence of this state; nevertheless, Texas intermediate appellate courts are not in accord.[4] Furthermore, this issue is not novel to federal courts. At least one federal circuit court concluded that the federal analog to Texas Chapter 59 forfeiture does not constitute "punishment" within the context of the Double Jeopardy Clause.[5] *See United States v. A Parcel Of Land With A Building Thereon*, 884 F.2d 41, 44 (1st Cir.1989).

### Analysis

■ Chapter 59 forfeiture actions are generally regarded as civil proceedings. §22,-

---

**2.** The Double Jeopardy Clause reads, "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. CONST. amend. V.

**3.** Under this statute, property that is contraband is subject to seizure and forfeiture. "Contraband" means any property, including real, personal, tangible, or intangible, that is used in the commission of a first degree felony. TEX.CODE CRIM.PROC.ANN. art. 59.01(2) (Vernon Supp. 1994). Possession of nine hundred forty-one pounds of marihuana is a first degree felony. TEX.PENAL CODE ANN. § 12.32 (Vernon Supp. 1994); TEX.HEALTH & SAFETY CODE ANN. § 481.121(d)(2) (Vernon 1992).

**4.** Two intermediate appellate courts have concluded that Chapter 59 forfeiture does not constitute "punishment" within the double jeopardy

equation. *See, e.g., Johnson v. State*, 882 S.W.2d 17 (Tex.App.—Houston [1st Dist.] 1994, pet. granted); *Ward v. State*, 870 S.W.2d 659 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd); *Walker v. State*, 828 S.W.2d 485 (Tex.App.—Dallas 1992, pet. ref'd); *Ex parte Rogers*, 804 S.W.2d 945 (Tex.App.—Dallas 1990, no pet). Only one intermediate appellate court holds otherwise. *See, e.g., Fant v. State*, 881 S.W.2d 830 (Tex. App.—Houston [14th Dist.] 1994, pet. granted) (holding that Chapter 59 forfeiture does constitute "punishment" for purposes of double jeopardy analysis).

**5.** The federal analog to Chapter 59 forfeiture is 21 U.S.C. § 881(a)(7).

*922.00 v. State,* 853 S.W.2d 99, 101 (Tex. App.—Houston [14th Dist.] 1993, writ denied); *Ex parte Rogers,* 804 S.W.2d 945, 948 (Tex.App.—Dallas 1990, no pet.) (discussing the statutory precursor of Chapter 59 forfeiture). Forfeiture proceedings are regarded as civil because the civil rules of procedure govern, and the standard of proof is by a preponderance of evidence. *Ward v. State,* 870 S.W.2d 659, 663 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd); *Ex parte Rogers,* 804 S.W.2d at 948; *Gonzales v. State,* 832 S.W.2d 706, 707 (Tex.App.—Corpus Christi 1992, no pet.).

Historically, the constitutional prohibition against multiple punishments was thought to arise only in criminal proceedings. *See, e.g., United States ex rel. Marcus v. Hess,* 317 U.S. 537, 548–49, 63 S.Ct. 379, 386–87, 87 L.Ed. 443 (1943) (emphasizing that jeopardy attaches only to criminal punishment). Courts generally refused to figure civil penalties into the double jeopardy equation. *See, e.g., Rex Trailer Co. v. United States,* 350 U.S. 148, 150–51, 76 S.Ct. 219, 220–21, 100 L.Ed. 149 (1956); *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). Then, the Supreme Court decided *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), expanding the scope of double jeopardy "punishment" to include civil penalties.

Appellants primarily rely on *Halper* and two other cases—*Department of Revenue v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) and *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993)—to support their claim that Chapter 59 forfeiture constitutes "punishment." Although we find the standards set forth in *Halper* instructive, appellants' reliance on *Halper, Kurth Ranch,* and *Austin* for support is misplaced.

In *Halper,* the Court considered the issue of whether, and under what circumstances, a civil sanction may constitute "punishment" for purposes of double jeopardy analysis. *Halper,* 490 U.S. at 446, 109 S.Ct. at 1900–01. Halper, the defendant, submitted sixty-five

false Medicare claims, overcharging the Federal Government a total of $585. *Id.* at 437, 109 S.Ct. at 1895–96. Under the criminal false claims statute, 18 U.S.C. § 287, the government convicted and sentenced Halper to two years in prison and imposed a $5000 fine. *Id.* The government then pursued civil action against Halper for his same fraudulent conduct, assessing a civil penalty in excess of $130,000 under the civil false claims statute, 31 U.S.C. §§ 3729–3731.[6] *Id.* at 438, 109 S.Ct. at 1896.

The trial court estimated the government spent no more than $16,000 in investigating and prosecuting Halper. *United States v. Halper,* 660 F.Supp. 531, 534 (S.D.N.Y.1987). Finding a tremendous disparity between the government's approximated expenses of $16,000 and Halper's liability in excess of $130,000, the trial court declared, "[T]he total amount necessary to make the Government whole bears no rational relation to the $130,000 penalty the Government seeks." *Id.* at 533. The trial court then concluded that imposing such a civil penalty in addition to the criminal conviction would violate Halper's constitutional protection against double jeopardy. *Id.*

The United States Supreme Court agreed, holding that the disparity between the government's approximated expenses of $16,000 and Halper's liability of $130,000 is sufficiently disproportionate such that the civil penalty constitutes a second punishment in violation of double jeopardy. *Halper,* 490 U.S. at 452, 109 S.Ct. at 1903–04. And, in the interest of justice, the Court remanded the case to permit the government to demonstrate its actual damages. *Id.*

■ *Halper,* therefore, teaches us that a defendant punished in a criminal prosecution may not be subjected to an additional sanction, even though civil, if the sanction is actually punitive in character. *Id.* at 448–49, 109 S.Ct. at 1901–02. A civil sanction will be considered punishment to the extent that it serves the purposes of retribution and deterrence, as opposed to furthering a nonpuni-

---

6. Under the civil false claims statute, the government was entitled to assess a civil penalty of $2000 for each of the sixty-five fraudulent claims

submitted ($130,000), plus twice the government's loss of $585 ($1160). *Halper v. United States,* 660 F.Supp. 531, 533 (S.D.N.Y.1987).

tive, remedial objective. *Id.* at 448, 109 S.Ct. at 1901–02. Thus, if the sanction is remedial in character, double jeopardy is not an issue. *Id.* at 448–49, 109 S.Ct. at 1901–02.

■ In determining whether a penalty is punitive or remedial, the *Halper* Court deemed it necessary to assess the purpose of the penalty. *Id.* at 447, 109 S.Ct. at 1901. The Court then set forth several guiding principles to assist courts in assessing whether the purpose of a penalty is remedial or punitive. *Id.* at 447–48, 109 S.Ct. at 1901–02. First, the Court opined that the legislative labels of "criminal" or "civil" are insignificant because civil penalties are known to advance remedial as well as punitive goals. *Id.* at 447, 109 S.Ct. at 1901. Then, the Court defined remedial as opposed to punitive penalties: A remedial penalty is one which merely reimburses the government for its actual damages arising from a defendant's conduct. *Id.* at 449, 109 S.Ct. at 1902. Actual damages may include monies expended on investigating, apprehending, prosecuting, and obtaining forfeiture against the defendant. *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1948; *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 237, 93 S.Ct. 489, 493, 34 L.Ed.2d 438 (1972); *Ex parte Rogers,* 804 S.W.2d at 950. The government is also entitled to remuneration for injury and loss suffered by the acts upon which forfeiture is predicated.[7] *See A Parcel Of Land,* 884 F.2d at 44 (explaining that the government is entitled to recover the costs from the ravages of drugs, such as drug-related crimes, drug-abuse treatment, rehabilitation, and prevention).

It may be difficult, if not impossible, in many cases for a court to determine the precise dollar figure for which a civil penalty accomplishes its remedial purpose, but beyond which the penalty takes on the character of punishment. *Id.,* 490 U.S. at 449, 109 S.Ct. at 1902. Thus, the process of affixing a penalty to compensate the government for all of its costs inevitably involves an element of rough remedial justice. *Id.*

■ Whereas remedial sanctions serve to compensate the government, the *Halper* Court explained that punitive sanctions serve the traditional dual aims of retribution and deterrence. *Id.* at 448, 109 S.Ct. at 1901–02. Any penalty that is not remotely approximated to the government's actual damages, but rather is exponentially greater, qualifies as punishment. *Id.* at 445–46, 449–50, 109 S.Ct. at 1900–01, 1902–03. Simply stated, a penalty qualifies as "punishment" if it is overwhelmingly disproportionate and "bears no rational relation to the goal of compensating the Government for its loss." *Id.* at 449–50, 109 S.Ct. at 1902.

In addition to setting forth guiding principles, the *Halper* Court announced the following rule:

> Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment.

*Id.*

■ This rule places the burden on the defendant to show absence of a rational relationship between the penalty amount assessed and the goal of compensating the government. *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1954 (O'Connor, J., dissenting). If the defendant in fact satisfies its burden and proves "no rational relationship," then the burden shifts to the government to justify the penalty. *Id.* The trial court then has discretion to determine, based on the accounting, whether the penalty crosses the line separating remedy from punishment. *Halper,* 490 U.S. at 450, 109 S.Ct. at 1902–03. Notably, a trial court's judgment may amount to no more than an approximation. *Id.*

7. Article 59.06, under "Chapter 59 forfeiture," provides for the disposition of forfeited property and specifies that forfeited funds and funds derived from the sale of forfeited property shall be used for law enforcement purposes and drug abuse rehabilitation programs. TEX.CODE CRIM.PROC.ANN. art. 59.06(c), (h) (Vernon Supp.1994).

■ In applying the *Halper* rule and guidelines, we recognize that in *Halper*, the civil penalty chronologically followed the criminal conviction; whereas in this case, the civil penalty precedes the criminal prosecution. We view the chronology of proceedings as irrelevant. *United States v. Sanchez–Escareno*, 950 F.2d 193, 200 (5th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 123, 121 L.Ed.2d 78 (1992) (stating the order of civil and criminal proceedings does not affect double jeopardy application); *Ex parte Rogers*, 804 S.W.2d 945, 947 (Tex.App.—Dallas 1990, no writ). The *Halper* rule applies regardless of whether the civil proceeding precedes or follows the criminal proceeding. *United States v. Mayers*, 897 F.2d 1126, 1127 (11th Cir.1990), *cert. denied*, 498 U.S. 865, 111 S.Ct. 178, 112 L.Ed.2d 142 (1990).

■ In this case, appellants inferentially argue that the value of their forfeited homestead is not rationally related to the goal of making the government whole. Although both parties stipulated that the appraised value of appellants' homestead was $19,682, appellants contend their homestead had value beyond its appraised value. While this may be so, appellants only produced evidence showing the stipulated value of $19,682.

*Halper* instructs us that forfeiture implicates double jeopardy considerations only if the forfeiture is overwhelmingly disproportionate to the damages appellants caused. *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902; *Johnson v. State*, 882 S.W.2d 17, 20 (Tex. App.—Houston [1st Dist.] 1994, pet. granted). At the hearing on appellants' applications for writ of habeas corpus, appellants failed to present evidence to show that their forfeiture was disproportionate to the damages they caused the State. Under *Halper*, appellants had the burden to show disproportionality. They failed to do so. The record is void of any showing on appellants' part that the $19,682 forfeiture was not rationally related to the State's loss. Therefore, we find that the appellants failed to satisfy their burden of proving their forfeiture was "punishment" under the *Halper* rule.

Appellants next rely on *Department of Revenue v. Kurth Ranch*, —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) to support

their double jeopardy claim. *Kurth Ranch* was decided in the wake of *Halper*. The issue in *Kurth Ranch* is whether a Montana state tax assessed for possession of illegal drugs, constitutes "punishment" for purposes of double jeopardy analysis. *Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1941. In *Kurth Ranch*, the Kurth family operated a grain and livestock ranch, along with cultivating and selling marihuana. *Id.* at ——, 114 S.Ct. at 1942. Montana law enforcement officials raided the ranch, arrested the Kurths, and confiscated all of the marihuana plants and paraphernalia. *Id.* The raid put an end to the Kurth's marihuana business and gave rise to four separate legal proceedings: (1) a criminal prosecution resulting in a sentence to prison, (2) a civil forfeiture proceeding—the Montana analog to Texas Chapter 59 forfeiture—where the Kurths forfeited $18,016 in cash and various items of equipment, (3) a tax assessment on the marihuana, where the state of Montana attempted to collect almost $900,000, and (4) a bankruptcy action. The third proceeding—the tax assessment—was at issue in *Kurth Ranch*, not the civil forfeiture proceeding.

We find that *Kurth Ranch* is inapplicable to this case primarily for two reasons. First, the Court in *Kurth Ranch* found it inappropriate to apply the *Halper* disproportionality rule to the Montana drug tax. *Id.* at ——, 114 S.Ct. at 1948. As the Court pointed out, "tax statutes serve a purpose quite different from civil penalties, and *Halper's* method of determining whether the tax exaction was remedial or punitive 'simply does not work in the case of a tax statute.' " *Id.* at ——, 114 S.Ct. at 1948. "Subjecting Montana's drug tax to *Halper's* test for civil penalties is therefore inappropriate." *Id.*

The second reason *Kurth Ranch* does not apply to this case is because the civil forfeiture action in *Kurth Ranch* was not at issue, as it is here. The *Kurth Ranch* civil forfeiture action was essentially the same type of forfeiture action the appellants in this case faced. Yet, the defendants in *Kurth Ranch* never complained that their forfeiture constituted "punishment." Therefore, *Kurth Ranch* does nothing to further appellants' claim.

Appellants further rely on *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). We find that *Austin* does not support appellants' position. In *Austin,* the Court faced the issue of whether a civil forfeiture constitutes "punishment" for purposes of the Eighth Amendment Excessive Fines Clause, not the Double Jeopardy Clause. The only mention of civil forfeiture as it relates to double jeopardy "punishment," is found in footnote 4 of the *Austin* opinion. If anything, the footnote parrots *Halper,* stating that the Double Jeopardy Clause has been held not to apply in civil forfeiture proceedings where the forfeiture is properly characterized as remedial, rather than punishment. *Austin,* —— U.S. at ——–—— n. 4, 113 S.Ct. at 2804–05 n. 4. *Austin* is inapplicable and does nothing to further appellants' claim.

We conclude that the *Halper* disproportionality rule is the applicable standard to be used in determining whether appellants' forfeiture constituted "punishment." However, according to the facts of this case, appellants failed to satisfy their burden of showing disproportionality, and thus "punishment" under the *Halper* rule. We, therefore, overrule appellants' sole point of error. The judgments of the trial court are AFFIRMED.