**Rosalinda ROMERO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–94–00002–CV.**

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 15, 1994.

Decided Nov. 4, 1994.

Rehearing Overruled Feb. 8, 1995.

David L. Joers, Crutsinger & Booth, Dallas, for appellant.

Dale Jensen, Asst. Dist. Atty., Dallas, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

OPINION

CORNELIUS, Chief Justice.

This is a drug forfeiture case. In October of 1990, Rosalinda Romero participated in two sales of cocaine to undercover police officers. Romero and an acquaintance arranged with an undercover officer for the sales at Romero's house at 7318 Thurston Street in Dallas.

Romero was tried for two offenses of delivery of cocaine but was only convicted for one two-ounce cocaine sale on October 5. She was tried in November of 1991 and was convicted and sentenced to five years' probation. Before trial the State filed a notice of seizure and intended forfeiture of Romero's house and lot. The State alleged that the property was contraband subject to forfeiture under Chapter 59 of the Texas Code of Criminal Procedure because it was used in the commission of the felony offense of delivery of cocaine. *See* TEX.CODE CRIM.PROC. ANN. art. 59.01(2)(B) (Vernon Supp.1994). In the forfeiture proceeding, the State filed a motion for summary judgment, which the trial court initially granted. The court thereafter set the summary judgment aside and granted Romero's motion for new trial. Romero then moved for summary judgment, contending that the forfeiture would amount to double jeopardy, citing *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). Although the record does not contain the court's order, according to Romero's brief the trial court denied her motion.

On June 28, 1993, after the case was set for trial, Romero and the State's attorney executed a settlement agreement in which the State agreed to release Romero and the property from all claims and liabilities in exchange for her agreement to sell the house and property and pay half of the proceeds to the State. On appeal and below Romero claims that the appraised value of the house and lot is a total of $46,540.00.[1] The settlement agreement was conditioned on its approval by the trial court and also on the trial court's granting of the parties' joint motion for dismissal. Although the record does not so indicate, the court apparently approved the settlement agreement. On June 28, 1993, the court dismissed the cause of action with prejudice.

On July 28, 1993, Romero filed a motion to modify the judgment and vacate the settlement agreement. Romero asserted that on June 28, 1993, the same day that the settlement agreement was signed, the United States Supreme Court issued its opinion in *Austin v. United States*, 509 U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), in which it held that forfeiture of real property in cases such as Romero's is punishment. She argued that under *Austin* a separate forfeiture proceeding after the criminal conviction amounts to multiple punishments for the same offense and violates the double jeopardy prohibition. She also contended that the settlement agreement she made was contrary to public policy, was induced by mutual mistake, was without consideration, and was unconscionable. She asked the trial court to modify the judgment and set aside the settlement agreement. The court held a hearing on Romero's motion. The State filed no counteraffidavits or written response, the hearing consisted only of argument of counsel, no evidence was presented, and the hearing was not recorded by the court reporter.

There being no written order regarding Romero's motion signed within seventy-five days of the judgment, her motion was overruled by operation of law. TEX.R.CIV.P. 329b(c), (g).[2]

■ In Romero's sole point of error, she says the trial court erred in failing to grant her motion to reform the order of dismissal and in failing to set aside the settlement agreement. Her basis for this argument is essentially the same as argued below—that under *Austin* the forfeiture of her property constitutes double jeopardy—and therefore the settlement is voidable because it is against public policy, was induced by mutual mistake, lacks consideration, and is unconscionable.

1. In her affidavit in support of her summary judgment, signed November 20, 1992, Romero appears to argue that the house is actually worth less than the appraised value, stating that the house is in need of repairs and that she had moved out of the house in August of 1992. She does state that she intends to move back into the house if the trial court lets her keep it.

2. The trial court signed an order overruling the motion in an order dated September 26, 1993, after the motion had already been overruled by operation of law.

■ Because Romero's motion to set aside the settlement agreement was equivalent to a motion for new trial, its denial is reviewable under an abuse of discretion standard, the same as the denial of a motion for new trial. *See* Tex.R.Civ.P. 329b(g); *Champion Int'l Corp. v. Twelfth Court of Appeals,* 762 S.W.2d 898, 899 (Tex.1988). The court's decision will not be disturbed unless it acted in an arbitrary or unreasonable manner and without reference to guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). The procedural history of this case is important because, even if we decide that under current law the forfeiture here violates the Double Jeopardy Clause, that does not necessarily render the trial court's denial of Romero's motion an abuse of discretion.

As noted, Romero argues that in *Austin* the Supreme Court held that forfeiture is punishment. The Court in *Austin,* however, did not address forfeiture and double jeopardy, but rather forfeiture and the Excessive Fines Clause of the Eighth Amendment. *Halper* addressed the issue of whether a civil penalty imposed in a separate proceeding after the imposition of criminal punishment constituted double jeopardy. The Court in that case said the penalty would constitute double jeopardy only in the rare case where a fixed penalty is overwhelmingly disproportionate to the damages caused by the crime and is therefore punitive rather than remedial. There are several courts of appeals decisions that have addressed the issues of forfeiture and double jeopardy. *See Fant v. State,* 881 S.W.2d 830 (Tex.App.—Houston [14th Dist.] 1994, no pet. h.); *Ward v. State,* 870 S.W.2d 659 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd); *Walker v. State,* 828 S.W.2d 485 (Tex.App.—Dallas 1992, pet. ref'd); *Ex parte Rogers,* 804 S.W.2d 945 (Tex.App.— Dallas 1990, no pet.). Only *Fant,* where the court in a split decision held that a forfeiture amounted to double jeopardy, was decided after the trial court decision here. *Ward, Walker,* and *Rogers,* which were in existence when the settlement here was made, all held that forfeiture did not constitute double jeopardy in the context of the facts existing in those cases because the forfeiture was remedial. Those decisions were clearly the law at the time the settlement agreement was executed. Even assuming, then, that under *Austin* forfeiture may constitute double jeopardy, that does not necessarily mean the trial court abused its discretion in this instance. At the time the court denied Romero's motion, the law was well established that civil forfeiture of drug contraband was remedial and double jeopardy was not violated unless the civil sanction was so disproportionate to the damage caused by the crime that the sanction became punitive rather than remedial. *See Ward v. State,* 870 S.W.2d at 662–63; *Walker v. State,* 828 S.W.2d at 490; *Ex parte Rogers,* 804 S.W.2d at 948–51. Indeed, Romero concedes that before *Austin* civil forfeiture proceedings were considered remedial. In *Rogers,* a case cited with approval by both *Ward* and *Walker,* the court noted that courts generally took a broad view of damages suffered by the government:

> The ravages of drugs upon our nation and the millions the government is being forced to spend upon investigation and enforcement—not to mention the costs of drug-related crime and drug abuse treatment, rehabilitation, and prevention—easily justify a recovery in excess of the strict volume of the property actually [forfeited].

*Ex parte Rogers,* 804 S.W.2d at 950 (*quoting United States v. A Parcel of Land With A Building Located Thereon,* 884 F.2d 41, 44 (1st Cir.1989)). Based on this broad view, the *Rogers* court found that forfeiture of $6,406.00 cash, two cars, one mobile home, one television, and two safes, all property purchased by proceeds from drug sales, was not so disproportionate to government expenses and the damage caused by Rogers' alleged drug distribution activities as to render the forfeiture nonremedial.

Using this broad view of the remedial nature of forfeiture, we conclude that the agreed settlement here does not violate the prohibition against double jeopardy. Romero was convicted of delivery of cocaine. The conviction was the result of an undercover operation by the Dallas police department involving several officers. The time and expense involved in such an operation, plus the

general damages to society resulting from drug trafficking, are quite substantial. We conclude that the forfeiture of one-half of a $46,000.00 house used as the base for cocaine trafficking is not so disproportionate to the damage and expense caused by the crime as to be considered punitive rather than remedial. Because the forfeiture action could be considered remedial, it would not violate the double jeopardy prohibition. Thus, given the law as it existed at the time of the settlement and the nature of the case, it was not unreasonable or arbitrary for the trial court to conclude that the settlement was supported by consideration, that neither side was laboring under a misconception of the law, and that the agreement was neither unconscionable nor against public policy.

 Even if the forfeiture became voidable under a contemporaneous or subsequent change of law, that would not affect the validity of this settlement agreement. One may not invoke equity to set aside a contract made in reliance on settled law announced by a court decision because the law is subsequently changed. *Pollard v. Steffens,* 161 Tex. 594, 343 S.W.2d 234, 238 (1961).

Because the settlement agreement was based on accepted law, and because neither *Austin v. United States* nor any other case had changed the law at the time the settlement was made, the trial court's decision was not arbitrary or unreasonable and did not constitute an abuse of discretion. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d at 241.

The judgment of the trial court is affirmed.

GRANT, Justice, dissenting.

Rosalinda Romero owns a small home in Dallas, which she inherited from her mother. Romero works as a short-order cook and earns $6.00 per hour. There are no allegations that this home was derived from drug trafficking or purchased with drug trafficking money. The basis of the forfeiture was the sale of two ounces of cocaine to Romero's boyfriend in her presence. According to the undisputed affidavits, except for this transaction, neither the house nor the lot had ever been a tool of drug trafficking, center of drug distribution, drug laboratory site, or the site of any drug cultivation.

The State claims to be enforcing a contract. This contract was made under the threat of taking all of her home instead of one-half. This is an unconscionable agreement. Forfeitures are not favored by the law. Even before *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the forfeiture could not be so extreme that it subjects the offender to a sanction overwhelmingly disproportionate to the damage he has caused.

I respectfully dissent.