**Ex Parte Constance Ann LEDBETTER.**

**No. 13–95–413–CR.**

Court of Appeals of Texas,
Corpus Christi.

June 6, 1996.

Jessie L. Allen, Terrell S. Mullins, Hallettsville, for appellant.

James W. Carr, Hallettsville, for state.

Before DORSEY, CHAVEZ and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

Appellant, Constance Ann Ledbetter, appeals from the trial court's denial of her writ of habeas corpus. Ledbetter sought writ on double jeopardy grounds to prevent her prosecution for driving while intoxicated ("DWI").[1] Ledbetter asserts that she had already been punished for her offense by having her driver's license suspended through an administrative license revocation ("ALR").[2] We affirm.

1. Tex. Penal Code Ann. § 49.04 (Vernon 1994 & Supp.1996).

2. Tex. Rev. Civ. Stat. Ann. art. 6687b–1, *now codified as* Tex. Transp. Code Ann. § 524.011 *et seq.* (Vernon Pamph.1996).

3. The maximum legal blood alcohol concentration while driving in a public place is less than .10 percent. *See* Tex. Penal Code Ann. § 49.01(2)(B) (Vernon 1994 & Supp.1996). ·

4. The Double Jeopardy Clause reads, "[Nor] shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const. amend. V.

## FACTUAL AND PROCEDURAL BACKGROUND

Ledbetter was arrested for DWI in Lavaca County, Texas on May 29, 1995. She submitted to an intoxilyzer test which revealed a blood alcohol concentration of greater than 0.10 percent.[3] The State gave Ledbetter notice of her driver's license suspension and of her right to request a hearing. When Ledbetter did not request an administrative hearing, her driver's license was suspended for sixty days. The DWI case was then set for trial and Ledbetter filed her writ of habeas corpus alleging that the criminal prosecution would violate her constitutional protections against double jeopardy. Following a hearing, the trial court denied the writ of habeas corpus, and this appeal ensued. By a single point of error, Ledbetter contends that the trial court erred in holding that the operation of the ALR statute followed by prosecution under the penal code does not offend the "multiple punishments" double jeopardy protections provided by the Fifth Amendment[4] to the United States Constitution and by Article I, § 14[5] of the Texas Constitution.

## DOUBLE JEOPARDY ANALYSIS

The Double Jeopardy Clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 439–40, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). The Texas Constitution, with one exception,[6]

5. **§ 14. Double jeopardy**
   Sec. 14. No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction.
   Tex. Const. art. I, § 14.

6. The Texas Court of Criminal appeals recently held that the Double Jeopardy Clause of the Texas Constitution bars further prosecution of a case when the prosecutor's actions deliberately or recklessly cause a mistrial. *Bauder v. State*, 921 S.W.2d 696, 699 (Tex.Crim.App. 1996). Under the federal constitution, the prosecutor's actions must be deliberate. *Id.* at 697. This exception is not applicable in the instant case.

has been construed to give no greater protection than the federal constitution in regard to double jeopardy. *Stephens v. State,* 806 S.W.2d 812, 815 (Tex.Crim.App.1990). Therefore, our analysis is the same for both provisions. *Id.* Only the third abuse is at issue in this appeal—multiple punishments for the same offense. We must therefore determine whether having one's driver's license administratively suspended due to registering above the legal limit on a breathalyzer test amounts to a "punishment" such that double jeopardy is implicated. We hold that it does not.

■ Historically, the constitutional prohibition against multiple punishments was thought to arise only in criminal proceedings. *Ex parte Camara,* 893 S.W.2d 553, 556 (Tex. App.—Corpus Christi 1994, no pet.). In *Halper,* however, the U.S. Supreme Court expanded the scope of double jeopardy to include civil penalties. 490 U.S. at 446–48, 109 S.Ct. at 1901; *Camara,* 893 S.W.2d at 556. A civil penalty qualifies as punishment if it is overwhelmingly disproportionate and bears no rational relation to the goal of compensating the government for its loss. *Halper,* 490 U.S. at 448–50, 109 S.Ct. at 1902; *Arnold v. State,* 920 S.W.2d 704 (Tex.App.—Houston [1st Dist.] 1996, no pet. hist.); *Camara,* 893 S.W.2d at 557.

■ Relying on *Halper,* Ledbetter contends that ALR imposes punishment because the license suspension is not solely remedial but also serves as retribution and deterrence. She specifically cites the following language: "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment." *Halper,* 490 U.S. at 448, 109 S.Ct. at 1902. We believe appellant reads *Halper* too broadly. The Court limited *Halper* to the rare case where the civil sanction is "overwhelmingly disproportionate to the damages" caused by the offense. *Id.* The Court further said that a civil sanction may be considered punishment when it "bears no rational relationship to the goal of compensating the Government for its loss." *Id.* Determining whether a civil sanction is punishment for double jeopardy purposes "re-quires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." *Id.* at 448, 109 S.Ct. at 1901.

■ A sanction does not become punishment for double jeopardy purposes merely because it serves an obvious deterrent purpose. *Department of Revenue v. Kurth Ranch,* 511 U.S. 767, —— – ——, 114 S.Ct. 1937, 1946–47, 128 L.Ed.2d 767 (1994); *Helber v. State,* 915 S.W.2d 955, 960 (Tex.App.—Houston [1st Dist.] 1996, no pet. hist.); *Ex parte Tharp,* 912 S.W.2d 887, 892 (Tex. App.—Fort Worth 1995, pet. granted). It becomes punishment when it is totally disproportionate to its rational purpose. *Halper,* 490 U.S. at 448–50, 109 S.Ct. at 1902; *Helber,* 915 S.W.2d at 960. Because license suspension is akin to the civil fines at issue in *Halper,* we conclude that the proper test for determining the primary purpose of ALR is the disproportionality analysis as set forth in that opinion. If the deterrent or retributive effects far outweigh any remedial goals, then the sanction is punitive. *Halper,* 490 U.S. at 448–50, 109 S.Ct. at 1902.

Administrative suspension of a driver's license has traditionally been viewed as remedial action initiated by the need to protect the public by removing dangerous drivers from the streets. *Tharp,* 912 S.W.2d at 890–91; *see Davison v. State,* 166 Tex.Crim. 376, 313 S.W.2d 883, 886 (1958) (op. on reh'g); *Texas Dep't of Pub. Safety v. Richardson,* 384 S.W.2d 128, 132 (Tex.1964); *Helber,* 915 S.W.2d at 961; *Arnold,* 920 S.W.2d at 707 ; *Raitano v. Texas Dep't of Pub. Safety,* 860 S.W.2d 549, 551 (Tex.App.—Houston [1st Dist.] 1993, writ denied). Although Ledbetter points to aspects of Art. 6687b–1, such as the expunction mechanism provided by § 5(d) and the provision for enhancement in § 6(b), as proof of the statute's penal nature, appellant fails to show that the legislature intended to punish the individual rather than protect the public when enacting this law.

Provisions such as § 5(d), which sets a forty-day delay in commencing the suspension, were included to protect the individual's due process rights. On the other hand, § 6(b), the enhancement provision, increases

286

the State's ability to protect the public from drivers who repeatedly disregard responsibilities imposed by the privilege of being licensed to drive. Through these provisions, the State balances the individual's rights against the need to protect the public from intoxicated drivers.

 Ledbetter further argues that even if ALR has some remedial effect, it cannot be said solely to serve a remedial purpose as required by *Halper*. Nevertheless, as the State argues, ALR serves the legitimate government interest of preserving the safety of its highways. The right of the government to regulate is part of its police powers to secure the health, protection, and well-being of its citizens. The license, permit, or charter is the authorization of the government to conduct certain businesses or professions or otherwise engage in particular activities. The license or permit is a means of the government to assure that certain criteria are met by the one who wishes to conduct those activities. The setting of qualifications of drivers on its highways is properly an activity of the State of Texas. As such, it grants licenses to drive and revokes licenses of unqualified drivers. *See Coyle v. State*, 775 S.W.2d 843, 846 (Tex.App.—Dallas 1989, no pet.). It may regulate, grant, and revoke licenses to drive on its highways in order to remedy hazardous conditions which endanger the welfare of other users of its streets and highways. The operation of ALR can be said to serve solely this purpose.

Having agreed that the license suspension statute is primarily remedial in nature, we must now determine if the punitive effects of ALR far outweigh the State's primary purpose of protecting the public from dangerous drivers. See *Halper*, 490 U.S. at 448–50, 109 S.Ct. at 1902.

Ledbetter's license was temporarily suspended for sixty days. We cannot say that this sanction is overwhelmingly disproportionate to the State's primary remedial purpose. Because she does not claim other punitive effects, we conclude that, as applied to Ledbetter, ALR is not punishment for double jeopardy purposes. Ledbetter's prosecution under § 49.04 of the Penal Code is therefore not barred by her prior license suspension pursuant to Art. 6687b–1. We overrule appellant's sole point of error.

We AFFIRM the trial court's denial of habeas corpus relief.