**Ex parte Augustine ARIZA, Appellant.**

**No. 03–95–00216–CR.**

Court of Appeals of Texas, Austin.

Nov. 8, 1995.

Order Overruling Rehearing Jan. 24, 1996.

Grady L. Roberts, Jr., Law Office of Grady L. Roberts, Jr., Pearsall, for Appellant.

Bill M. Reimer, District Attorney, Dib Waldrip, Assistant District Attorney, New Braunfels, for the State.

Before CARROLL, C.J., and JONES and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

Appellant was charged in the proceeding below with engaging in organized criminal activity by delivering marihuana. *See* Tex.Penal Code Ann. § 71.02 (West 1994).[1] In a previous Bexar County proceeding appellant's 1982 Ford pickup was forfeited to the State, based on the allegation that it was used to commit the felony offense of possession or delivery of marihuana. *See* Tex.Code Crim.Proc.Ann. art. 59.02 (West Supp.1995); Tex.Health & Safety Code Ann. §§ 481.120–.121 (West Supp.1995). Both of these proceedings arose out of the same occurrence. Appellant claims that, because he was punished by the forfeiture, double jeopardy bars the Comal County prosecution. *See Stephens v. State*, 806 S.W.2d 812, 814 (Tex. Crim.App.1990), *cert. denied*, 502 U.S. 929, 112 S.Ct. 350, 116 L.Ed.2d 289 (1991) (pretrial writ of habeas corpus appropriate reme- dy to review double jeopardy claim). Because the same offense formed the basis for each proceeding, and because the forfeiture already punished appellant for that offense, we hold that the Double Jeopardy Clause of the United States Constitution bars appellant's prosecution.

## Background

In November 1994, appellant's truck was forfeited to the State based on the allegation that the truck was

> intended to be used in the commission of a delivery, manufacture, and/or possession of ... MARIHUANA, in violation of the Texas Health and Safety Code, Section 481.120 and/or Section 481.121....

The cited provisions of the Health and Safety Code prohibit the delivery and possession of marihuana. *See* Tex.Health & Safety Code Ann. §§ 481.120–.121 (West Supp.1995). The seizing officer's affidavit specifically alleged that appellant's truck was used to "facilitate the commission of ... Delivery of Marijuana"; it stated that appellant was arrested "during the buy bust operation in which Ariza, Cruz, Castillo, and Gonzales delivered approximately 23 pounds of marijuana" to an investigator. Although the final judgment does not reflect whether the truck was forfeited pursuant to possession or delivery of marihuana, we conclude from the seizing officer's affidavit that the forfeiture arose from the offense of delivery of marihuana.

In October 1994, appellant was indicted for engaging in organized criminal activity. *See* Tex.Penal Code Ann. § 71.02 (West 1994). The indictment alleged that in January of that year appellant delivered over five but less than fifty pounds of marihuana, and that he committed [2] the offense

---

1. This offense was allegedly committed before September 1, 1994, and is governed by the law in effect at that time. Penal Code, 73rd Leg., R.S., ch. 900, § 1.18, 1993 Tex.Gen.Laws 3586, 3705. Because the code amendments effective September 1, 1994 have no substantive effect on this offense, the current code is cited for the sake of convenience.

2. A person can be guilty of engaging in organized criminal activity if that person "commits or conspires to commit" an underlying offense enumer- ated in section 71.02. Tex.Penal Code Ann. § 71.02(a) (West 1994). The indictment in the present case put applicant on notice that he was accused of *committing* the underlying offense of delivery of marihuana. Had applicant been charged with conspiring to commit the underlying offense, our analysis might be different. *See Lindley v. State*, 855 S.W.2d 729, 730 (Tex.App.— Tyler 1993, no pet.) (Double Jeopardy Clause does not bar successive prosecutions for substantive offense and conspiracy to commit that offense).

with the intent to establish, maintain, or participate in a combination or the profits of a combination, consisting of the defendant and ISRAEL CASTILLO, JUAN GONZALES and CARLOS JOSE CRUZ....

The parties do not dispute that both the forfeiture proceeding and the criminal prosecution arose out of the same criminal occurrence.

### Discussion and Holding

■ The Double Jeopardy Clause of the Fifth Amendment states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This clause "represents a fundamental ideal in our constitutional heritage" and has been held to apply to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). The Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). The protection against multiple punishments, at issue in this case, is deeply rooted in the Double Jeopardy Clause. James Madison, in drafting the initial version of that Clause, focused explicitly on the issue of multiple punishment: "No person shall be subject, except in cases of impeachment, to more than one punishment or one trial for the same offense." 1 Annals of Cong. 434 (1789–1791) (J. Gales ed. 1834) (cited in *Halper*, 490 U.S. at 440, 109 S.Ct. at 1897). Although Texas forfeiture proceedings are civil in nature, this label does not prevent the sanction of forfeiture from being characterized as punishment under the Double Jeopardy Clause. *Montana Dept. of Rev. v. Kurth Ranch*, — U.S. —, — – —, 114 S.Ct. 1937, 1946–47, 128 L.Ed.2d 767, 779 (1994).

*Double Jeopardy and the Underlying Criminal Offenses*

■ First, we determine whether the criminal offenses which formed the basis of each proceeding are the "same" for the purpose of the Double Jeopardy Clause. In making this determination, we employ the *Blockburger* test and ask whether each offense contains an element not contained in the other. *United States v. Dixon*, 509 U.S. 688, —, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556, 568 (1993); *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Rice v. State*, 861 S.W.2d 925 (Tex.Crim.App.1993). If the answer to this question is 'no,' then the offenses are the "same" for the purpose of the Double Jeopardy Clause. *Dixon*, 509 U.S. at —, 113 S.Ct. at 2856, 125 L.Ed.2d at 568; *Rice*, 861 S.W.2d at 925.

■ A person commits the offense of delivery of marihuana when that person knowingly or intentionally transfers, actually or constructively, marihuana to another. Tex. Health & Safety Code Ann. §§ 481.120, 481.002(8) (West 1992 and Supp.1995). A person commits the offense of engaging in organized criminal activity, as alleged in the indictment, if, with intent to establish, maintain, or participate in a combination or in the profits of a combination, he commits delivery of marihuana. Tex.Penal Code Ann. § 71.02(a)(5) (West 1994); *see also* Tex.Penal Code Ann. § 1.07(12) (West 1994); Tex. Health & Safety Code Ann. §§ 481.002(5), 481.032(a)(3) (West 1992). For the State to prove that appellant engaged in organized criminal activity by delivering marihuana, it must prove all the elements of the Bexar County offense—delivery of marihuana. Thus, for the purpose of the Double Jeopardy Clause, these are the "same" offenses.

*Civil Forfeiture and Punishment*

■ We next consider whether the forfeiture of the truck amounted to punishment for the offense of delivery of marihuana. We note that the order of the forfeiture and the criminal prosecution is irrelevant to our analysis; the Double Jeopardy Clause will bar the second sanction if both sanctions are deemed punishment. *United States v. Tilley*, 18 F.3d 295, 298 n. 5 (5th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994). If forfeiture under our statute seeks to approximate the State's

costs attributable to investigating and prosecuting the offense giving rise to the forfeiture, thereby serving only the purpose of compensating the State for these costs, then it is remedial in nature and does not constitute punishment. *Halper*, 490 U.S. at 448, 109 S.Ct. at 1901. On the other hand, if forfeiture serves *at least in part* to punish the owner of the forfeited property, then it serves as punishment for the purpose of the Double Jeopardy Clause. *Id.* at 448, 109 S.Ct. at 1901. We begin our analysis with a review of Supreme Court cases that have addressed the issues central to this inquiry.

### The Supreme Court and Double Jeopardy

In *United States v. Halper*, the defendant submitted sixty-five fraudulent reimbursement claims to Medicare, resulting in an actual monetary loss to the government of $585. *Halper*, 490 U.S. at 437, 109 S.Ct. at 1895. After obtaining a conviction under the criminal false-claims statute, the government sought to exact a fine from Halper pursuant to the civil False Claims Act. *See* 31 U.S.C.A. §§ 3729–3731 (West Supp.1995). Under the fixed-penalty provisions of the Act, which were imposed on a per-claim basis, Halper was subject to a penalty in excess of $130,000. The Supreme Court determined that, although the penalty provisions of the Act normally served to compensate the government for its losses, in Halper's unusual case the penalty was "overwhelmingly disproportionate to the damage" he caused. *Id.* at 449, 109 S.Ct. at 1902. The Court held that, to the extent a civil sanction is not rationally related to the goal of making the government whole, the sanction acts as a punishment for the purpose of the Double Jeopardy Clause. *Id.* at 451, 109 S.Ct. at 1903. The Court then remanded the case to the district court to determine whether the disparity between the government's loss and the fine was so great that the fine served as punishment. *Id.* at 452, 109 S.Ct. at 1903. The process of making this determination has come to be known as the *Halper* "disproportionality analysis." *See Johnson v. State*, 882 S.W.2d 17, 19 (Tex.App.—Houston [1st Dist.] 1994, pet. granted).

Four years after *Halper*, the Supreme Court addressed the question of whether forfeiture under the federal forfeiture statute imposed a punishment. *Austin v. United States*, 509 U.S. 602, ————, 113 S.Ct. 2801, 2806–07, 125 L.Ed.2d 488, 498 (1993). Although *Austin* ultimately turned on whether the forfeiture at issue violated the Excessive Fines Clause of the Eighth Amendment, the Court recognized that the clause "limits the Government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Id.* at ————, 113 S.Ct. at 2805, 125 L.Ed.2d at 497 (emphasis in original) (citation omitted); *see also id.* at ————, n. 14, 113 S.Ct. at 2812, n. 14, 125 L.Ed.2d at 505, n. 14 (Stating that "a fine that serves purely remedial purposes cannot be considered 'excessive' in any event."). In making its determination, the Court asked the same question it asked in *Halper*: whether the civil forfeiture served the wholly remedial purpose of compensating the government, or whether it served at least in part to punish the owner of the forfeited property. *Id.* at ————, ———— n. 12, 113 S.Ct. at 2806, 2810 n. 12, 125 L.Ed.2d at 498, 503 n. 12.

Before examining the statute itself, the Court traced the history of forfeiture in England and the United States, and determined that the Court had consistently "recognized that forfeiture serves, at least in part, to punish the owner." *Austin*, 509 U.S. at ————, 113 S.Ct. at 2810, 125 L.Ed.2d at 503. Turning to the current forfeiture statute, the Court first observed that the "innocent owner" exemptions in the statute focused "on the culpability of the owner in a way that makes them look more like punishment, not less." *Id.* at ————, 113 S.Ct. at 2811, 125 L.Ed.2d at 504. The Court then noted that the forfeiture statute tied forfeiture directly to the commission of drug offenses. Finally the Court looked at the legislative history of the statute, which characterized the statute as "a powerful deterrent," and which recognized the inadequacies of "traditional criminal sanctions" in *deterring and punishing* those involved in the drug trade. *Id.* (emphasis added). Based on these considerations, the Court concluded that the forfeiture statute did not serve solely a remedial purpose, and

that forfeiture under the federal statute constituted punishment. *Id.* at —— ——, 113 S.Ct. at 2811–12, 125 L.Ed.2d at 505. The Court found nothing in the current statute "to contradict the historical understanding of forfeiture as punishment." *Id.* at ——, 113 S.Ct. at 2810, 125 L.Ed.2d at 503. In reaching its conclusion, the Court rejected the government's argument that, because the forfeited assets serve to compensate for government expenditures on law enforcement, drug addiction treatment, and other societal concerns stemming from the drug trade, forfeiture under the statute should be characterized as remedial. *Id.* at —— —— ——, 113 S.Ct. at 2811–12, 125 L.Ed.2d at 504–05.

Following *Austin,* the Supreme Court considered whether a tax imposed on the possession or storage of drugs constituted punishment. *Montana Dep't of Rev. v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). The Court answered in the affirmative. *Id.* at ——, 114 S.Ct. at 1948, 128 L.Ed.2d at 781. In arriving at its answer, the Court first observed that imposition of the tax was conditioned on the commission of a crime. *Id.* at —— —— ——, 114 S.Ct. at 1946–47, 128 L.Ed.2d at 779. The Court noted that any legitimate revenue-raising purpose of the tax could be accomplished by increasing the fine imposed upon conviction; thus, the objective of raising revenue did not justify the tax. *Id.* at ——, 114 S.Ct. at 1947, 128 L.Ed.2d at 780. The Court also pointed out the tax statute's unusual feature of imposing a tax on property that the taxpayer neither owns nor possesses when the tax is imposed. *Id.* at ——, 114 S.Ct. at 1948, 128 L.Ed.2d at 781. This feature gave the tax "an unmistakable punitive character." *Id.* at ——, 114 S.Ct. at 1948, 128 L.Ed.2d at 781. The Court observed that *Halper's* disproportionality analysis "simply does not work in the case of a tax statute," and held that subjecting the tax to that analysis was inappropriate. Thus the Court concluded that imposition of Montana's drug tax would always constitute punishment. *Id.* at ——, 114 S.Ct. at 1948, 128 L.Ed.2d at 781.

*The Texas Forfeiture Statute*

In resolving the issue of whether forfeiture under Chapter 59 of the Code of Criminal Procedure always constitutes punishment, we do not write on a clean slate. The United States Supreme Court has addressed the issues which control our inquiry. Texas authorities, however, are split on the issue of whether forfeiture under our statute constitutes punishment. *See, e.g., Johnson v. State,* 882 S.W.2d 17, 20 (Tex.App.—Houston [1st Dist.] 1994, no pet.) (holding that defendant failed to meet burden of showing forfeiture constituted punishment); *cf. Fant v. State,* 881 S.W.2d 830, 834 (Tex.App.—Houston [14th Dist.] 1994, pet. granted) (holding that forfeiture under Texas statute must be characterized as punitive). *Halper's* disproportionality analysis appears to be the hobgoblin of double jeopardy jurisprudence creating this division. Courts applying this analysis to the civil forfeiture—double jeopardy inquiry have concluded that forfeiture does not constitute punishment when the value of the forfeited assets approximates the State's costs attributable to the underlying offense. *See Ex parte Camara,* 893 S.W.2d 553, 559 (Tex.App.—Corpus Christi 1994, no pet.) (employing *Halper's* proportionality analysis and concluding that forfeiture does not necessarily constitute punishment); *Johnson v. State,* 882 S.W.2d 17, 20 (Tex. App.—Houston [1st Dist.] 1994, pet. granted) (same); *Elmore v. State,* 905 S.W.2d 431, 433 (Tex.App.—Waco, 1995, no pet. h.) (same); *Ward v. State,* 870 S.W.2d 659, 663 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd), vacated and remanded, —— U.S. ——, 115 S.Ct. 567, 130 L.Ed.2d 485; *Walker v. State,* 828 S.W.2d 485, 490 (Tex.App.—Dallas 1992, pet. ref'd) (same). The Fourteenth Court of Appeals in *Fant* determined that *Halper's* disproportionality analysis does not apply to civil forfeiture, and held that forfeiture *always* serves at least in part to punish. *Fant,* 881 S.W.2d at 834.

■ The crucial question is whether forfeiture of lawfully owned property under the Texas statute can ever be characterized as solely remedial. *Halper,* 490 U.S. at 448, 109 S.Ct. at 1901; *Austin,* 509 U.S. at ——, 113 S.Ct. at 2810, 125 L.Ed.2d at 503. The application of *Halper's* disproportionality analysis to civil forfeiture presupposes that, in some cases, forfeiture can serve a solely remedial purpose. We rely on Supreme Court author-

ity in deciding that *Halper's* disproportionality analysis should not be applied to forfeitures under a statute such as ours.

In *Kurth Ranch* the Court observed:

Criminal fines, civil penalties, civil forfeitures, and taxes all share certain features: They generate government revenues, impose fiscal burdens on individuals, and deter certain behavior. All of these sanctions are subject to constitutional constraints.

While all four sanctions share these features, Supreme Court authority dictates that they each have dissimilar features that govern a double jeopardy analysis. *Halper* announced the rule that where a *fixed-penalty provision* imposes a sanction overwhelmingly disproportionate to the damage caused, the offender is entitled to an accounting of the government's damages to determine whether the sanction constitutes punishment. *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902. Thus the Court explicitly tied the disproportionality analysis to cases where the sanction was determined by a formula that attempted to approximate the government's damages. Because such formulas normally accomplish the objective of approximating these damages, the Court contemplated that *Halper's* disproportionality analysis would come into play only in "the rare case." *Id.* at 449, 109 S.Ct. at 1902.

In holding *Halper's* disproportionality analysis inapplicable to Montana's tax statute, the Supreme Court observed that "the formula by which Montana computed the tax assessment would have been the same regardless of the amount of the State's damages and, indeed, regardless of whether it suffered any harm at all." *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1948, 128 L.Ed.2d at 781. Chief Justice Rehnquist in his dissent stated that the majority "wisely does not subject the Montana tax to the *Halper* analysis," noting that the tax did not "involve a 'fixed-penalty provision.'" *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1949, 128 L.Ed.2d at 783 (Rehnquist, C.J., dissenting) (citing *Halper,* 490 U.S. at 449, 109 S.Ct. at 1902). *Kurth Ranch* reinforced *Halper's* teaching that disproportionality analysis was intended to be applied only where the statute provides a formula that attempts to impose a penalty approximately equal to the government's damages.

The federal forfeiture statute contains no formula which attempts to correlate the value of the forfeited property with the government's damages. Thus the Supreme Court recognized that the "dramatic variations in the value of conveyances and real property forfeitable under [the statute] undercut *any*" argument that the statute serves to compensate the government. *Austin v. United States,* 509 U.S. at ——, 113 S.Ct. at 2812, 125 L.Ed.2d at 505 (emphasis added). The Court explicitly stated that, in contrast to *Halper's* small *fixed-penalty* provision which usually serves to approximate the Government's costs, the value of forfeited property "can vary so dramatically that *any* relationship between the Government's actual costs and the amount of the sanction is merely coincidental." *Austin,* 509 U.S. at —— n. 14, 113 S.Ct. at 2812 n. 14, 125 L.Ed.2d at 505 n. 14 (emphasis added). The Fifth Circuit emphasized this aspect of *Austin:*

The *Austin* Court, 509 U.S. at —— [– ——], 113 S.Ct. at 2811–12, stated that the forfeitures of conveyances and real estate have *no* correlation to, or proportionality with, the costs incurred by the government and society because of the large and unpredictable variances in the values of real estate and conveyances in comparison to the harm inflicted upon the government and society by the criminal act.

*Tilley,* 18 F.3d at 300 (emphasis added).[3]

■ The Texas forfeiture statute shares with the federal statute this feature of un-

---

3. *Tilley* addressed the question of whether the forfeiture of drug *proceeds* amounted to punishment for the purpose of the Double Jeopardy Clause. *Tilley,* 18 F.3d at 297. In concluding that such forfeiture was not punishment, the court observed that "the forfeiture of drug proceeds will always be directly proportional to the amount of drugs sold." *Id.* at 300. The court held that, because proceeds are always roughly proportional to the harm inflicted by the sale, the logic of *Austin* precluding a disproportionality analysis is inapplicable to the forfeiture of drug proceeds. *Id.*

The court also pointed out that unlike conveyances, the holder of drug proceeds "has no rea-

predictability in the value of the forfeitable property. *See* Tex.Code Crim.Proc.Ann. arts. 59.01(2), 59.02 (West Supp.1995). Any relationship between the government's costs and the value of the forfeited property will always be coincidental. Because there is nothing inherently proportional about the sanction imposed under our forfeiture statute, it is inappropriate to apply a *Halper* disproportionality analysis. Indeed, *Austin* has foreclosed the possibility of employing *Halper's* proportionality analysis in determining whether forfeiture under the Texas statute can be characterized as wholly remedial or punitive.[4]

Because the Texas forfeiture statute makes no attempt to approximate the State's costs attributable to the offense underlying the forfeiture, *Halper's* disproportionality analysis cannot be used to characterize a given forfeiture as remedial, even if the damages to the State happen to approximate the value of the forfeited property. *See Austin,* 509 U.S. at —— – ——, 113 S.Ct. at 2811–12, 125 L.Ed.2d at 505. This is true despite the Texas statute's remedial goals, evidenced by the statute itself. *See* Tex.Code Crim.Proc. Ann. art. 59.06(c), (h) (West Supp.1995) (providing that funds derived from forfeiture be used for law enforcement purposes and substance abuse treatment programs); *see also Austin,* 509 U.S. at —— – ——, 113 S.Ct. at 2811–12, 125 L.Ed.2d at 504–05; *Halper,* 490 U.S. at 448, 109 S.Ct. at 1901. Furthermore, the Supreme Court has disposed of any argument that forfeiture of property used as "instruments" of crime serve the remedial purpose of removing that instrumentality and

thereby protecting society from continued crime. *See Austin,* 509 U.S. at ——, 113 S.Ct. at 2811, 125 L.Ed.2d at 504. The Court reasoned that, while the forfeiture of actual contraband[5] may be characterized as remedial because it removes dangerous or illegal items from society, "there is nothing even remotely criminal in possessing an automobile" or other properties characterized as "instrumentalities." *Austin,* 509 U.S. at ——, 113 S.Ct. at 2811, 125 L.Ed.2d at 505 (citing *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 699, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965)). Accordingly, we conclude that forfeiture under the Texas statute cannot be characterized as solely remedial under the theories described above.

■ We next determine whether forfeiture under the statute otherwise "serves *in part* to punish, and one need not exclude the possibility that forfeiture serves other purposes to reach that conclusion." *Austin,* 509 U.S. at ——, n. 12, 113 S.Ct. at 2810, n. 12, 125 L.Ed.2d at 503, n. 12; *see also Halper,* 490 U.S. at 448, 109 S.Ct. at 1901. We look to the same factors considered by the Supreme Court in this analysis. Like the federal statute, the Texas statute contains an "innocent owner" defense, revealing the statute's focus on the culpability of the owner. Tex.Code Crim.Proc.Ann. art. 59.02(c) (West Supp.1995). This provision reflects the statute's aim which serves the goal of punishment by imposing forfeiture as a penalty only on those persons involved in criminal activity. *See Austin,* 509 U.S. at —— – ——, 113 S.Ct. at 2810, 125 L.Ed.2d at 503; *Fant,* 881

---

sonable expectation that the law will protect, condone, or even allow, his continued possession of such proceeds because they have their very genesis in illegal activity." *Id.* Thus the forfeiting party loses nothing to which he was legally entitled. *Id.* The court reasoned that, rather than punishing the forfeiting party, forfeiture merely places the party "in the lawfully protected financial status quo that he enjoyed prior to launching his illegal scheme." *Id.*

**4.** The Thirteenth Court of Appeals found *Austin* inapplicable to the issue of whether forfeiture constitutes punishment. *Ex Parte Camara,* 893 S.W.2d at 559. It rested its conclusion on the observation that *Austin* concerned whether a civil forfeiture constitutes punishment under the Eighth Amendment Excessive Fines Clause. We

believe this is a distinction without a difference. In making its determination in *Austin,* the Supreme Court asked the same question it asked in *Halper:* whether the civil sanction at issue served a solely remedial purpose, or whether it served the purpose of punishment. *Austin,* 509 U.S. at ——, 113 S.Ct. at 2806, 125 L.Ed.2d at 498. Furthermore, *Tilley* acknowledges that *Austin* applies to Double Jeopardy analysis of forfeitures of conveyances and real estate. *Tilley,* 18 F.3d at 300.

**5.** "Contraband" in this context does not share the broad meaning of "contraband" as that term is defined in the Code of Criminal Procedure. *See* Tex.Code Crim.Proc.Ann. art. 59.01(2) (West Supp.1995).

S.W.2d at 834. We agree with the Fourteenth Court of Appeals that the inclusion of the drug forfeiture statute in the Texas Code of Criminal Procedure tends to support the conclusion that the Texas forfeiture law serves at least in part to punish drug offenders. *Fant*, 881 S.W.2d at 835.

We next look at the legislative history of the Texas forfeiture statute. House Bill 65 of the 71st Legislature, First Called Session, was adopted as Chapter 59 of the Code of Criminal Procedure. *See* Act of Aug. 2, 1989, 71st Leg., 1st C.S., ch. 12, § 1, Tex.Gen.Laws 14, 21. The history of House Bill 65 directly reveals the punitive purpose of that statute:

> HB 65 would *increase the punishment* of criminals by allowing the state to confiscate property connected with almost any felony, rather than the limited crimes covered by current law. This bill, similar to the bill introduced in the regular session as part of Speaker Lewis' anti-crime package would hit hard at the economic incentives for crime by expanding the amount of crime-connected property subject to being forfeited. The economic power of a crime organization could be crushed by the confiscation of its assets.

House Research Organization, Bill Analysis, July 14, 1989, Tex.H.B. 65, 71st Leg., 1st C.S. (1989) (emphasis added). This passage echoes the history of the relevant provisions in the federal statute examined by the *Austin* Court, which reflected Congress' realization that "the traditional criminal sanctions of fine and imprisonment are inadequate to deter or punish the enormously profitable trade in dangerous drugs." *Austin*, 509 U.S. at ——, 113 S.Ct. at 2811, 125 L.Ed.2d at 504 (citing S.Rep. No. 98–225, p. 191 (1983)). The history of the Texas statute reveals the same legislative objective that the *Austin* Court found significant in characterizing forfeiture under the federal statute as punitive—a desire to deter and punish crime through civil forfeiture. The Supreme Court found that this history "confirmed the punitive nature" of these provisions; we similarly conclude that the Texas legislative history confirms that the state statute "serves to punish." *See Austin*, 509 U.S. at —— n. 12,

——, 113 S.Ct. at 2810 n. 12, 2811, 125 L.Ed.2d at 503 n. 12, 504.

## Conclusion

As the Supreme Court observed, forfeiture has been historically understood as punishing the owner of the forfeited property. *Austin*, 509 U.S. at ——, 113 S.Ct. at 2810, 125 L.Ed.2d at 503. The Texas statute does not distinguish itself from this history. An application of Supreme Court authority to the considerations outlined above leads us to the inescapable conclusion that forfeiture under the Texas statute serves to punish the owner of the forfeited property. *See Austin*, 509 U.S. at ——, 113 S.Ct. at 2813, 125 L.Ed.2d at 507 (Scalia, J., concurring) (the "taking of lawful property must be considered, in whole or in part ... punitive"). We hold that forfeiture of lawfully owned property under Chapter 59 of the Code of Criminal Procedure constitutes punishment for the purpose of the Double Jeopardy Clause.

■ The State argues that because applicant never became a party to the forfeiture proceeding, jeopardy did not attach in that proceeding. However, the documents in the forfeiture proceeding and the findings of fact below both acknowledge that appellant held an ownership interest in the truck. The punishment aspect of the forfeiture lies in appellant's loss of his ownership interest in the vehicle. Thus we find it irrelevant to our analysis that appellant did not appear as a party to the forfeiture proceeding.

Because the Bexar County forfeiture has punished appellant for his criminal conduct, the Double Jeopardy Clause of the United States Constitution bars any further prosecution that could result in additional punishment for that same conduct. We therefore reverse the trial court's order and render judgment that the relief sought in the application for writ of habeas corpus be granted.

Before CARROLL, C.J., and JONES and B.A. SMITH, JJ.

## ON MOTION FOR REHEARING

BEA ANN SMITH, Justice.

On Motion for Rehearing, the State argues that the Court addressed in summary fash-

ion, without supporting authority, the critical issue of whether jeopardy attaches when the owner of forfeited property fails to appear in the forfeiture proceeding.[1] We write to elaborate our holding that jeopardy did attach to the owner of the forfeited property under the circumstances of this case.

The State quite properly argues that we must find that jeopardy has attached before there is any need to inquire into the punitive nature of the forfeiture. *Ex parte McAfee*, 761 S.W.2d 771, 772–73 (Tex.Crim.App.1988). The State unconvincingly relies on the holding in *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975), a case dealing with a pre-trial motion to dismiss the prosecution, to argue that jeopardy did not attach in the default forfeiture proceeding at issue here.

■ We begin by noting that *Serfass* involved the Double Jeopardy Clause's protection against a second prosecution for the same offense following an acquittal, 420 U.S. at 387–388, 95 S.Ct. at 1061–1063, while our case involves its protection against the distinct abuse of multiple punishments for the same offense. *See United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). When safeguarding against multiple prosecutions, jeopardy does not attach until a defendant is "put to trial before the trier of facts." *Serfass*, 420 U.S. at 388, 95 S.Ct. at 1062 (citations omitted). Because Serfass's motion to dismiss the indictment came before trial, the court at that point had no jurisdiction to determine his innocence or guilt; the court had jurisdiction only to grant or deny the motion to dismiss. Because the accused was never subjected to the risk of conviction, jeopardy did not attach.

> Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier "having jurisdiction to try the question of the guilt or innocence of the accused."

*Id.* at 391, 95 S.Ct. at 1064 (citations omitted).

■ Because our case involves the distinct abuse of multiple punishments for the same offense, the *Serfass* requirement that the accused must be "put to trial before the trier of facts," does not control when jeopardy attaches. In *Serfass*, jeopardy did not attach because the accused was never subjected to the risk of conviction. By contrast, the trial court that conducted the civil forfeiture proceeding had jurisdiction to and did forfeit the property of the accused. Ariza's right to assert the forfeiture as a bar to further punishment "attached" when the forfeiture order was made.

The State argues that jeopardy did not attach because Ariza did not appear at the forfeiture proceeding to assert his claim to the property. The Fifth Circuit has recently determined that jeopardy did not attach in a summary forfeiture proceeding to which a defendant was not a party. *United States v. Arreola–Ramos*, 60 F.3d 188 (5th Cir.1995). The court announced that when jeopardy is claimed, as a threshold issue we must determine whose property the government acquired in the forfeiture proceeding. "For it is axiomatic that there can be no punishment if the property forfeited did not belong to the person claiming jeopardy." *Id.* at 192. The property forfeited in *Arreola–Ramos* were funds allegedly acquired from a drug-related offense. The federal statute requires the government (1) to publish in the newspaper, once a week for three successive weeks, notice of its intent to forfeit and, (2) to send notice of the seizure to any party who appears to have an interest in the property. 19 U.S.C.A. § 1607(a) (West 1980 & Supp.1995). If a claimant timely files a claim, the government is required to commence a judicial forfeiture proceeding. However, if no claim is filed, the government simply makes an automatic declaration of forfeiture and title is vested in the United States in an administrative proceeding. *Arreola–Ramos* involved this summary procedure, not a judicial forfeiture hearing.

The Fifth Circuit reviewed the record before it from the summary administrative pro-

---

1. Because we believe that our original opinion sufficiently addresses the State's second point on rehearing, that under the "same elements" test, the two offenses were different for purposes of double jeopardy analysis, we do not further comment on that issue in this opinion.

ceeding and determined that nothing in the record revealed who owned the funds at issue. Bound by the record, which conflicted with Arreola's later assertions (made in the criminal proceedings) that the funds were his, the court felt constrained to hold that *no one* owned the forfeited funds and therefore no one had been punished. "Absent a trial, a party, and a punishment, jeopardy can never attach." *Arreola–Ramos,* 60 F.3d at 192.

The case before us can be distinguished from *Arreola–Ramos* on several grounds. First, we are dealing with a judicial forfeiture proceeding, not a summary administrative procedure. Second, *Arreola–Ramos* involved proceeds of a drug transaction, which cannot legally be "owned" by anyone. *United States v. Tilley,* 18 F.3d 295, 300 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994). Third, the federal forfeiture statute declares that no property interest exists in property subject to forfeiture. 21 U.S.C.A. § 881(a) (West 1981 & Supp.1995). By contrast, the Texas forfeiture statute presupposes an actual owner of property subject to forfeiture. *See* Tex.Code Crim.Proc.Ann. art. 59.04(b)(1) (West Supp.1996). Fourth and most importantly, the record from the forfeiture proceeding before us does establish Ariza's ownership interest in the truck. This record distinguishes our case from *Ramirez v. State,* 916 S.W.2d 32 (Tex.App.—Houston [1st Dist.] 1995, no pet. h.), which involved a record from the forfeiture proceeding that was *silent* as to anyone's ownership interest in the forfeited funds from a drug transaction. 916 S.W.2d at 34. The record before the *Ramirez* court included only the agreed judgment from the forfeiture proceeding; it did not in any way tie Ramirez to the forfeited funds. *Id.* The appellate court refused to *assume* that Ramirez had any ownership interest in those funds, and thus found that in the absence of any record of Ramirez's ownership interest, he was not punished by the forfeiture. *Id.* at 34. By contrast, our record establishes Ariza's ownership interest in the forfeited truck. For all these reasons, we cannot say that Ariza's property was "unowned" by virtue of his failure to appear in the forfeiture proceeding.

Because we answer the threshold question, that it was Ariza's truck that the government acquired in the forfeiture proceeding, we hold that jeopardy did attach at that time. For the reasons outlined in our original opinion that the forfeiture, which was predicated on the same offense charged in the indictment, constituted at least in part a punishment, we overrule the motion for rehearing and adhere to our holding that the Double Jeopardy Clause bars any subsequent criminal prosecution that could result in additional punishment for the same conduct.