**Ex Parte James BAUCOM.**

**No. 09–95–077 CR.**

Court of Appeals of Texas,
Beaumont.

Submitted July 24, 1995.

Decided Aug. 28, 1996.

\* The Honorable Joe L. Draughn, sitting by assignment pursuant to TEX. GOV'T CODE ANN. § 74.003(b)

Willard J. Hall, Jr., Beaumont, for appellant.

Tom Maness, Criminal District Attorney, Rodney D. Conerly, Assistant Criminal District Attorney, Beaumont, for State.

Before BURGESS, STOVER and DRAUGHN,\* JJ.

**OPINION**

DRAUGHN, Justice (Assigned).

Appellant, James H. Baucom, contends the trial court erred in denying him habeas corpus relief. The constitutional issue he raises is a familiar and current one: whether a civil judgment of forfeiture constitutes a bar to later prosecution for a criminal offense on the basis of double jeopardy. The items civilly forfeited by appellant were a pickup truck, a hand gun, and some digital scales. He was charged with the criminal offenses of attempted capital murder (two separate offenses) and possession of a controlled substance. We affirm the denial of habeas corpus relief.

On May 14, 1995, officers Glynn Walker and Roger Trahan of the Beaumont Police

(Vernon 1988).

Department answered a disturbance complaint. Based on the complaint, they entered appellant's hotel room. Appellant was intoxicated and sleeping, and when awakened, waved a gun at both officers. The officers arrested appellant and found methamphetamine on appellant's person. Pursuant to TEX.CODE CRIM. PROC. art. 59.02 (Vernon Supp.1996), they seized a 1986 Chevrolet pickup truck, a motorcycle, and a Browning .380 caliber semi-automatic pistol, digital scales, a video camcorder, and $555.00 in cash.

On May 27, 1993, appellant was indicted on two counts of attempted capital murder. On June 11, 1993, the Jefferson County District Attorney filed an Original Notice of Seizure and Intention to Forfeit in the 58th District Court. An agreed final judgment in the civil forfeiture case was entered on July 7, 1993, forfeiting the pickup truck, the gun and the digital scales. Finally, on September 16, 1993, appellant was again indicted, this time on one count of possession of a controlled substance. Appellant filed a writ of habeas corpus. He asserted that further prosecution of the three criminal indictments was barred on double jeopardy grounds, because the agreed final judgment of forfeiture constituted a separate punishment for the same offense.

In a single point of error, appellant asserts his right to be free from being twice placed in jeopardy for the same offense was violated by the indictments pending against him for attempted capital murder and possession of a controlled substance.

■ The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989).

The instant case implicates the third of these protections.[1]

■ Appellant, relying on a recent opinion issued by the U.S. Court of Appeals for the Fifth Circuit, takes the position that civil forfeitures are *per se* violative of the constitutional protection against double jeopardy, because they are at least partially punitive. We acknowledge that the Fifth Circuit court appears to have adopted such an approach. *United States v. Perez*, 70 F.3d 345 (5th Cir.1995), *petition for cert. filed*, 64 U.S.L.W. 3823 (U.S. May 31, 1996) (No. 95–1948). We also note that the Fourteenth Court of Appeals, and more recently, the Austin Court of Appeals reached similar conclusions. *Fant v. State*, 881 S.W.2d 830, 834 (Tex.App.—Houston [14th Dist.] 1994, pet. granted); *Ex parte Ariza*, 913 S.W.2d 215 (Tex.App.—Austin 1995, pet. filed). *Fant* takes the position that it is a matter of timing which determines whether a civil forfeiture implicates double jeopardy protection. It effectively held that unless the civil forfeiture action is carried out in the same proceeding as the criminal action, it acts as a bar to the criminal prosecution on double jeopardy grounds. *Fant, supra*, at 834. *Ariza*, on the other hand, reached the "inescapable" conclusion that the Texas forfeiture statutes serves to punish the owner of forfeited property, and thus constitutes double jeopardy barring the criminal prosecution. *Ariza, supra*, at 223. Each of these cases relied on the U.S. Supreme Court's opinion in *Halper* to justify their conclusions. *Halper*, to many, appeared to stand for the proposition that civil forfeiture serves in part to punish or deter, and therefore implicates the Fifth Amendment's protection against double jeopardy. *U.S. v. Halper*, 490 U.S. at 448–449, 109 S.Ct. at 1902. Other Supreme Court opinions subsequent to *Halper* were also relied on to buttress the conclusion that civil forfeitures automatically run afoul of the double jeopardy provision. *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994); *Austin v.*

---

1. Appellant also relies on article 1, § 14 of the Texas Constitution. No separate analysis, however, is necessary because the Texas Court of Criminal Appeals has ruled the state constitution affords no greater protection than the U.S. Constitution in regard to double jeopardy. *Stephens v. State*, 806 S.W.2d 812, 815 (Tex.Crim.App. 1990), *cert. denied*, 502 U.S. 929, 112 S.Ct. 350, 116 L.Ed.2d 289 (1991).

*United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).

In a recent opinion, the U.S. Supreme Court laid to rest the notion that civil in rem forfeitures *per se* implicate double jeopardy protection. In effect, the Supreme Court held that civil forfeitures generally do not constitute "punishment" for purposes of the Double Jeopardy Clause. *United States v. Ursery,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). Civil forfeiture proceedings were initiated against Ursery's home, under a federal forfeiture statute, when police found marijuana growing adjacent to his house, along with marijuana seeds, stems, stalks and a grow light inside the house. Ursery paid a monetary amount to settle the forfeiture claim. Before the settlement was consummated, he was indicted for manufacturing marijuana. He was tried, convicted, and sentenced to 63 months in prison. The Sixth Circuit Court of Appeals reversed, holding that the Double Jeopardy Clause prohibited the government from both punishing a defendant for a criminal offense and forfeiting his property for that same offense in a separate civil proceeding. A separate case from the Ninth Circuit Court of Appeals which reached the same conclusion was consolidated with the appeal. The Supreme Court reversed, holding that its opinions in *Halper, Austin,* and *Kurth Ranch,* had been misinterpreted and did not stand for the proposition that any civil forfeiture proceeding constitutes punishment for purposes of the Double Jeopardy Clause. The Court referred to both legislative and judicial history, and pointed out that it has consistently held that the Double Jeopardy Clause does not apply to in rem forfeitures because they are civil in nature and do not constitute punishment. *Ursery,* —— U.S. at —— ——, 116 S.Ct. at 2140–2142. The Court referred to previous cases which distinguished between in rem civil forfeitures directed against property and in personam civil penalties such as fines. The latter could, in some circumstances, be punitive and thereby implicate double jeopardy protections; the former, historically, could not. *Id.*

The Court went on to distinguish *Halper* from the mistaken interpretation placed on it by the Courts of Appeals. *Halper* merely provided that a statutory civil fine or other civil penalty may be so extreme and disproportionate to the government's damages that it could constitute a second punishment in violation of double jeopardy. The Court remanded *Halper* to the district court for a so-called disproportionality review, so that the lower court could hear evidence regarding the government's actual damages and reduce *Halper's* liability to a nonpunitive level. It emphasized the fixed nature of the monetary penalty set out in the statute in *Halper* and the case-specific nature of its holding. *Id.* at ——, 116 S.Ct. at 2143. *Halper* in no way involved civil forfeiture and the Court did not intend to apply its rationale to in rem forfeitures. *Id.* at ——, 116 S.Ct. at 2144. However, the disproportionality approach of *Halper* was also mistakenly applied by some Texas appellate courts to civil forfeiture cases apparently to avoid what they perceived to be the forthcoming application of double jeopardy to civil forfeitures. *State v. Romero,* 907 S.W.2d 858 (Tex.App.—Houston [1st Dist.] 1995, n.p.h.); *Elmore v. State,* 905 S.W.2d 431 (Tex.App.—Waco 1995 n.p.h.); *Cavazos v. State,* 899 S.W.2d 5 (Tex.App.—San Antonio 1995, no pet.); *Ex parte Camara,* 893 S.W.2d 553 (Tex.App.—Corpus Christi 1994, no pet.); *Johnson v. State,* 882 S.W.2d 17 (Tex.App.—Houston [1st Dist.] 1994, pet. granted); *Walker v. State,* 828 S.W.2d 485 (Tex.App.—Dallas 1992, pet. ref'd). In *Ursery,* the Supreme Court laid to rest this notion that the disproportionality test in *Halper* could be applied to civil forfeiture cases. It distinguished the civil *penalties* such as that in *Halper* from civil in rem *forfeitures.* Statutory "civil penalties" are designed as a rough form of "liquidated damages" for the harms suffered by the government as a result of a defendant's conduct. *Ursery,* —— U.S. at ——, 116 S.Ct. at 2145; *Halper,* 490 U.S. at 445–446, 109 S.Ct. at 1900. In *Halper,* there was a fixed monetary penalty for each false medicare claim count on which Halper was convicted in the criminal proceedings. This civil monetary penalty was determined to be more than 220 times greater than the government's actual damages, which the Court found was so divorced and disproportionate from the government's

damages as to constitute punishment. *Halper*, 490 U.S. at 441–442, 109 S.Ct. at 1898. Civil penalties are thus designed to compensate the government, while civil forfeitures are primarily designed to confiscate property used in violation of the law, and to require surrender of the fruits of illegal conduct. *Ursery*, —— U.S. at ——, 116 S.Ct. at 2145. In forfeitures, it may be possible to determine the value of the property seized, but it is virtually impossible to approximate the value of the non-punitive purposes of a particular civil forfeiture. Hence, the Court concluded the case by case balancing test between the monetary penalty imposed and the harm suffered by the government is inapplicable to civil forfeitures. *Id.*

In *Ursery*, the court went on to distinguish *Austin* and *Kurth Ranch* from the extreme interpretations placed on them by the lower courts. *Austin*, the court pointed out, did not involve the Double Jeopardy Clause at all, rather, it was decided solely under the Excessive Fines Clause of the Eighth Amendment. Forfeitures effected under the applicable federal statute in *Austin* are subject to review for excessiveness under the Eighth Amendment, but that does not mean that such forfeitures are so punitive as to constitute punishment for the purposes of double jeopardy. The court limited *Austin* to the Excessive Fines Clause of the Eighth Amendment and refused to import its analysis therein into double jeopardy jurisprudence. *Ursery*, —— U.S. at ——, 116 S.Ct. at 2146.

In *Kurth Ranch*, the Court considered whether a state tax imposed on marijuana was invalid under the Double Jeopardy Clause, after the taxpayer had already been criminally convicted of owning the marijuana. The Court examined the difference between the Montana tax and the typical revenue-raising tax, and found the marijuana tax unique in that it was conditioned on the commission of a crime, and was levied only after the taxpayer had been arrested. The Court further noted that the taxpayer did not own or possess the marijuana at the time the tax was imposed. The Court found that despite the fact that Montana had labeled the civil sanction a tax, it was punitive in nature,

and was the functional equivalent of a successive criminal prosecution. It affirmed the court of appeals decision barring the tax as violating the prohibition against double jeopardy. *Ursery*, —— U.S. at ——, 116 S.Ct. at 2144.

In short, the Supreme Court in *Ursery* stated that none of the cases, *Halper, Austin,* and *Kurth Ranch,* stood for the proposition that civil in rem forfeitures were punishment and subject to double jeopardy constraints. The Court pointed out that had it intended such a radical departure from the historical basis of in rem civil forfeitures, it would have specifically said so. *Ursery*, —— U.S. at ——, 116 S.Ct. at 2147. The Court then employed a two-part test derived from prior cases as a useful "analytical tool" to determine whether the forfeitures were punitive. *Id.* The first prong of the test asks whether Congress intended proceedings under the relevant forfeiture statute to be criminal or civil. *Id.* Second, the Court considers whether the proceedings are so punitive in fact as to persuade them that they cannot be viewed as civil in nature despite the intent of Congress. *Id.*

As to the first part of the test, the Court, after examining the procedural mechanisms, administrative nature of the hearings, and the burden of proof required in the statute, found the forfeitures were clearly civil in nature. The fact that the forfeitures were directed at property rather than at a person also indicated the civil nature of the procedure. Further it held that when a forfeiture is designated as civil by Congress and proceeds in rem, a presumption is created that it is not subject to double jeopardy. *Ursery*, —— U.S. at ——, n. 3, 116 S.Ct. at 2148, n. 3. The Court, however, was careful to note that it was not holding in rem civil forfeitures are *per se* exempt from the scope of the Double Jeopardy Clause. Only where the "clearest proof" indicates that an in rem civil forfeiture is "so punitive either in purpose or effect" as to be equivalent to a criminal proceeding, will such forfeiture be subject to the Double Jeopardy Clause. *Id.*

The Court went on to explain that even though a forfeiture statute serves the purpose of deterrence, it has long held that this

purpose may serve civil as well as criminal goals. Further, it pointed out that the mere fact that a forfeiture statute is tied to criminal activity falls far short of the "clearest proof" necessary to show that forfeiture proceedings are criminal in nature, and therefore, subject to Double Jeopardy protections. *Ursery,* —— U.S. at ——, 116 S.Ct. at 2149. The Court concluded that in rem civil forfeitures are neither punishment nor criminal for purposes of Double Jeopardy. *Id.*

Applying the rationale of *Ursery* to the Texas forfeiture statute, we find that the civil nature of the statute is clear. TEX.CODE CRIM. PROC. ANN. arts. 59.02, 59.05 (Vernon Supp.1996). All parties in the Texas forfeiture proceedings must comply with the rules of pleading as required in civil suits. *See,* art. 59.05(a). The trial in forfeiture proceedings is required to be conducted in the same manner as other civil cases, and the State's burden of proof in such proceeding is the civil standard, by a preponderance of the evidence. *See,* art. 59.05(b). The legislature specifically spelled out that the intended purpose of the statute was remedial rather than punitive. *See,* art. 59.05(e). The statute also provides a civil remedy for the person who claims ownership in the seized property. The person may by posting proper security or bond replevy the seized property. *See,* art. 59.02(b). The Texas forfeiture statute has all the requisites set out in *Ursery* to establish it as civil in nature, rather than punitive.

Here, appellant was given proper notice of the civil forfeiture hearing as required by statute. His counsel appeared on his behalf at the forfeiture proceedings. The State presented undisputed evidence that appellant waved and pointed the seized handgun at the officers. The State also presented evidence that the officers found a controlled substance in the possession of appellant. He entered into an agreed final judgment as to forfeiture of the handgun, the pickup, and the digital scales.

After careful consideration of the facts of this case, and after applying the rationale of the *Ursery* case to it, we find that the civil nature of the Texas forfeiture statute is clearly established; and therefore, the State's seizure and the subsequent forfeiture of appellant's property thereunder was not a criminal punishment bringing it within the ambit of the protections of the Double Jeopardy Clauses of the United States and Texas Constitutions. Accordingly, we find that appellant's subsequent indictments for attempted capital murder and possession of a controlled substance were not constitutionally barred.

We overrule appellant's points of error and affirm the judgment denying the application for Writ of Habeas Corpus.

BURGESS, Justice, dissenting.

I respectfully dissent. The majority, in applying the two-pronged "analytical tool" discussed in *Ursery* reaches the conclusion the Texas Forfeiture Statute is civil in nature and therefore, is not within double jeopardy protection. Like the Austin Court of Appeals and, adopting their rationale, I reach the "inescapable conclusion" there is the clearest proof the Texas statute is so punitive in form and effect as to render it criminal in nature, despite the Legislature's stated intent to the contrary. *Ex Parte Ariza,* 913 S.W.2d 215, 223 (Tex.App.—Austin 1995, pet. filed). I would reverse the judgment.